**Clifton Alan CLOER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–01–00297–CR.

Court of Appeals of Texas,
San Antonio.

July 17, 2002.

Vincent D. Callahan, San Antonio, for Appellant.

Susan D. Reed, Criminal Dist. Atty., Enrico B. Valdez, Asst. Criminal Dist. Atty., San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, and SARAH B. DUNCAN, Justice.

Opinion by CATHERINE STONE, Justice.

Clifton Alan Cloer challenges the trial court's order denying his motion to suppress, asserting that the written statement that he sought to have suppressed was obtained in violation of his Fifth and Sixth Amendment rights. We conclude that the trial court erred in denying the motion to suppress because the written statement was obtained in violation of Cloer's Sixth Amendment rights.[1] Accordingly, we reverse the trial court's judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

On September 20, 1999, Cloer accompanied Detective Thomas Matjeka to the police station for questioning in regard to a murder. Cloer provided two written statements. One of those statements identified two suspects—Arturo Hernandez and Tanya Alward.

On September 24, 1999, Alward was located and taken to the police station for questioning. Detective Matjeka phoned Cloer and asked if he would be willing to accompany a uniformed officer to the station to identify Alward from a photo line-up. Before Cloer arrived at the station, Detective Matjeka interviewed Alward, who stated that Hernandez and Cloer were involved in the murder.

After Cloer arrived at the station, he identified Alward from a photo line-up. In response to questioning, Cloer repeated the version of the events contained in the second written statement he gave on September 20, 1999; however, Detective Matjeka noted a few inconsistencies. Upon further questioning regarding the details provided by Alward, Cloer told Detective Matjeka that he "got it right" and "what you said, that's what happened." When Detective Matjeka told Cloer that Cloer needed to tell him what happened in his own words, Cloer began to repeat the version of the events contained in his second statement. Detective Matjeka stopped Cloer and told him that he was under arrest for capital murder. Cloer was arrested on an outstanding municipal court warrant while Detective Matjeka prepared the paperwork necessary to obtain a capital murder arrest warrant. The following day, September 25, 1999, Detective Matjeka secured a capital murder arrest warrant which he executed on Cloer, who was in jail.

On October 18, 1999, Detective Matjeka went to the jail to interview Cloer. Although Detective Matjeka stated that he did not know that Cloer was represented by an attorney when he went to see him, Detective Matjeka stated that he knew that Cloer was represented by an attorney "when we started talking." Detective Matjeka stated that Cloer informed him of who his attorney was about five minutes into the interview and asked him what he thought of her. Cloer also asked Detective Matjeka, "Do you mind if I call my attorney?" Detective Matjeka told him, "No, if that's what you want to do. That's fine." Detective Matjeka stated that Cloer never asked for a phone even though a phone was present in the office where the inter-

---

1. We do not address Cloer's Fifth Amendment complaint because it is not necessary to the final disposition of the appeal. *See* TEX.R.APP. P. 47.1

view occurred. Detective Matjeka continued the interview and took a third written statement from Cloer, which is the statement Cloer sought to have suppressed.

The trial court denied the motion to suppress. The trial court entered written findings of fact and conclusions of law. The following findings are relevant to the issue raised in this appeal:

40. On September 25, 1999, a capital murder warrant was executed.

41. On October 18, 1999, the detective went to interview Cloer at the jail.

42. Prior to beginning the interview, Detective Matjeka gave Cloer warnings and explained his rights to him (State's Exhibit C), which Cloer stated he understood.

43. During this interview, Cloer asked the detective if he knew his lawyer. The detective responded that he did and told him that she was a good lawyer.

44. Cloer did not, however, ask to speak with his lawyer or otherwise say that he wanted her present.

45. Cloer then gave a third statement.

46. In accordance with the requirements of article 38.22 of the Texas Code of Criminal Procedure, Cloer's third statement (State's Exhibit D) was reduced to writing.

The trial court concluded that "Cloer knew of his sixth amendment right to counsel and knowingly and intelligently waived his right to counsel and gave a third statement to Detective Matjeka freely and voluntarily."

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under an abuse of discretion standard. *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997). We view the evidence in the light most favorable to the trial court's ruling, and we afford almost total deference to the trial court's determination of historical facts that the record supports, especially when the fact findings are based on an evaluation of the witnesses' credibility and demeanor. *Id.* We review de novo the court's application of the law to the facts. *Id.*

## SIXTH AMENDMENT

The Sixth Amendment provides a right to assistance of counsel in all criminal prosecutions. *See Robinson v. State*, 851 S.W.2d 216, 224 (Tex.Crim.App.1991). The right to counsel attaches at the formal initiation of adversary judicial proceedings. *Id.* Adversary judicial proceedings are initiated by a formal charge, preliminary hearing, indictment, information or arraignment. *Id.* If an accused has formed an attorney-client relationship with an attorney for representation in a pending criminal case, and the Sixth Amendment right has attached, an accused's unilateral waiver of his Sixth Amendment right is invalid. *Holloway v. State*, 780 S.W.2d 787, 796 (Tex.Crim.App.1989). Under those circumstances, "police may initiate interrogation only through notice to defense counsel." *Upton v. State*, 853 S.W.2d 548, 557 (Tex.Crim.App.1993). Absent permission from defense counsel, officers cannot approach the defendant and solicit his waiver. *See Flores v. State*, 49 S.W.3d 29, 33 (Tex.App.-San Antonio 2001, pet ref'd).

At the hearing on the motion to suppress, the State did not argue that Cloer's Sixth Amendment right had not attached when Detective Matjeka questioned him on October 18, 1999. It is clear from our record that counsel was appointed to represent Cloer on October 4, 1999. In order for a court to appoint counsel, the court must determine that a defendant

*charged* with a felony or misdemeanor punishable by imprisonment is indigent or otherwise entitled to appointed counsel. Act of June 19, 1987, 70th Leg., R.S., ch. 979 § 2, 1987 Tex. Gen. Laws 38.22.[2] The appointment of counsel to represent Cloer indicates that charges had been filed and that adversary judicial proceedings had been formally initiated against him. Accordingly, Cloer's Sixth Amendment right had attached at the time he was questioned on October 18, 1999.

■ Although the record reflects that counsel had been appointed to represent Cloer, the State asserts that the record does *not* contain sufficient evidence that an attorney-client relationship between Cloer and his appointed counsel, Tina Tussay, had been established. However, Cloer's question to Detective Matjeka about "his" lawyer is some evidence that he had accepted Tussay as his attorney. Furthermore, the State had the burden to prove that the attorney-client relationship had not been established. *See Upton v. State,* 853 S.W.2d at 557. Given the appointment of Tussay and Cloer's reference to her as "his" attorney, the State failed to carry its burden of proof on this issue. *See id.; see also Holloway v. State,* 780 S.W.2d at 796 n. 11 (noting knowledge of appointment of counsel can be imputed between state agents). Because Cloer was represented by an attorney, Detective Matjeka was prohibited from interrogating Cloer without notifying Tussay, and Cloer's unilateral waiver of his Sixth Amendment right was invalid even though he received the required *Miranda* warnings. *See Upton,* 853 S.W.2d at 557; *Holloway,* 780 S.W.2d at 796.

■ Although the written findings of fact and conclusions of law do not specify the basis for the trial court's denial of the motion to suppress, the trial court verbally stated its reason for the denial at the hearing, asserting, "Again, State's Exhibit D is a little more of a closer question; but I'm going to rule under 38.22(3)(c) that even if there was an unequivocal request for an attorney, that the statement still comes in." The trial court's reliance on article 38.22(3)(c) is misplaced because the evidence in question was the written statement not the oral statements made by Cloer during the interrogation. Although the Court of Criminal Appeals has held that the oral statements made by a defendant may be admissible under article 38.22(3)(c) even if the subsequent written statement is inadmissible, the statement in that case was tendered to the trial court by the State on the theory that it was an oral statement. *Perillo v. State,* 758 S.W.2d 567, 574 (Tex.Crim.App.1988). The issue before the trial court at the suppression hearing in this case was the admissibility of the written statement, and the State subsequently tendered the written statement as an attachment to Cloer's plea bargain documents. Since the admissibility of Cloer's oral statements was not the issue before the trial court, article 38.22(3)(c) is not applicable and does not support the trial court's ruling. We further note that the *Perillo* decision has been highly criticized as allowing the State to circumvent the limits on the admissibility of written self-incriminating statements, and Cloer may have been successful in challenging the trial court's ruling if the State had tendered the statement as an oral statement, notwithstanding the *Perillo* holding. *See* George E. Dix, *Texas 'Confession' Law and Oral Self-Incriminating*

**2.** Article 26.04 of the Texas Code of Criminal Procedure was extensively revised effective January 1, 2002; therefore, we refer to the language of article 26.04 that was in effect at the time of Cloer's arrest.

*Statements,* 41 BAYLOR L.REV. 1, 28–30 (1999); George E. Dix and Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 13.82 (2d ed.2001).

■ Having concluded that the trial court erred in denying the motion to suppress, we must determine whether Cloer's written statement was somehow "used" by the State in obtaining Cloer's guilty plea and subsequent conviction. *See Gonzales v. State,* 966 S.W.2d 521, 524 (Tex.Crim. App.1998). By contributing to the State's leverage in the plea bargaining process, "we may presume that at least to some extent the State has 'used' the contested evidence to obtain [Cloer's] plea." *Id.* at 523 (quoting *Kraft v. State,* 762 S.W.2d 612, 614–15 (Tex.Crim.App.1988)). Furthermore, the written statement was attached to Cloer's Waiver, Consent to Stipulation of Testimony and Stipulations that was included in the documents signed by Cloer in connection with his plea bargain agreement.

### CONCLUSION

The trial court erred in denying Cloer's motion to suppress the written statement taken on October 18, 1999, because the statement was obtained in violation of Cloer's Sixth Amendment rights. The trial court's judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.