**Charles J. ROGERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–02–00451–CR.**

Court of Appeals of Texas, San Antonio.

June 11, 2003.

From the 175th Judicial District Court, Bexar County, Texas, Trial Court No. 2001–CR–6656; Mary Román, Judge Presiding.[1]

Robert H. Featherston, Ray Taylor, Taylor & Correa, P.C., San Antonio, for appellant.

Edward F. Shaughnessy, III, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting: KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This appeal raises novel issues regarding privacy rights with regard to computers. Charles L. Rogers ("Rogers") was convicted of possession of child pornography pursuant to a plea bargain agreement and was placed on ten years community supervision. Rogers filed written motions to suppress and a motion to dismiss, which the trial court ruled on prior to trial. On appeal, Rogers contends that the trial court erred in denying his motions. We overrule Rogers's contentions and affirm the trial court's judgment.

### BACKGROUND

On August 7, 2000, Rogers brought his computer into Help Me Computers, because he could not get his computer system to function properly. The computer repair technician "booted" up the computer system and determined that the computer system had a virus. This virus was determined to be an ICQ Trojan virus, which infects all executable files. Executable files are needed by the computer to make a program open or close.

---

1. The Honorable Mary Román presided over the hearing on the motions to suppress and entered findings of fact and conclusions of law with regard to her order denying those motions. The Honorable Pat Priest presided over the hearing on the motion to dismiss and entered findings of fact and conclusions of law with regard to his denial of that motion. The Honorable Mary Román presided over the plea proceeding and imposed sentence.

A standard virus eradication program was run. As a result of the virus, damage occurred to the system registry which also required repair. The technician discovered that many areas had been corrupted, including the backup in the computer system. Rogers was contacted by the computer repair technician and advised of what had been found (damage and corruption of the backup in the system) and what needed to be done. Rogers was advised that his only option to fix the problem on his computer was to wipe the hard drive and reload it.

At this point, Rogers requested that some files be backed up. According to the technician, Rogers was adamant about having two main things backed up: (1) all of the documents on the system; and (2) all of the photos on the system. Rogers specifically asked that all his photos be backed up on his computer. He told the technician "I have a lot of pictures on my hard drive. I want all my photos backed up." On the same day, Rogers went by the computer repair shop and brought in the programs to reload and a list of items he wanted backed up on his computer system. Fox Rover (a news downloading program) was included on the list of items/programs to be backed up. Additionally, Rogers called the technician later the same day and specifically instructed the technician to back up Image Expert and all jpeg files.

According to the computer repair technician, proper procedure in the computer repair industry requires "verification of data that has been backed up so that when you return the data to the customer, you don't overcharge him for some that was not properly done." In backing up files, the technician was required to double check the information being backed up. In verifying that the programs opened after the repairs, the technician opened the

Fox Rover program. This program was pointing to a Lolita site which is site terminology for child pornography on the internet. As the technician was going through the verification process in backing up the jpeg files in the Agent folder (the directory for the Fox Rover program, which Rogers had specifically requested be backed up on his computer), the technician detected some photographs that he thought might be child pornography. The technician then came across a photo of a child that he was certain was child pornography. The technician later found "well over a hundred picture files that were child pornography in the Agent folder."

During the initial investigation by Detective Lowry, a determination was made that the images on Rogers's computer contained child pornography. At this time, the computer was shut down, seized, and taken directly to the property room of the SAPD. A forensic search of the computer was later undertaken after a search warrant was obtained.

### MOTIONS TO SUPPRESS

Rogers filed two motions to suppress. The first motion sought to suppress all physical evidence, including all evidence seized from Rogers's computer hard drive, that was obtained prior to the issuance of a search warrant. The second motion sought to suppress all evidence seized as a result of a search of Rogers's computer because the search warrant relied on in conducting the search was not lawful.

#### 1. Issues on Appeal

■ In its brief, the State initially contends that Rogers has failed to preserve his appellate complaints regarding the motions to suppress because Rogers fails to identify which images were obtained at each stage, i.e., which images the technician initially discovered, which images the

technician discovered after speaking with Detective Lowry, which images were discovered after the search warrant was obtained, etc. Furthermore, the State notes that only one image was used to obtain Rogers's conviction based on his guilty plea, and Rogers has failed to identify at which stage this image was discovered.

▪ The determination of which images were discovered at each stage is not relevant to our review of the trial court's order in this appeal. The State's argument ignores the reality that the trial court denied the motion to suppress regardless of the stage at which various images were obtained. A defendant is not required to have the evidence contested in a motion to suppress admitted as a prerequisite to an appeal from the denial of a motion to suppress following a guilty plea. *See Gonzales v. State*, 966 S.W.2d 521, 524 (Tex. Crim.App.1998); *Cloer v. State*, 88 S.W.3d 285, 290 (Tex.App.-San Antonio 2002, no pet.). "By contributing to the State's leverage in the plea bargaining process, 'we may presume that at least to some extent the State has 'used' the contested evidence to obtain [Rogers'] plea.' " *Cloer*, 88 S.W.3d at 290. If this court were to hold in this appeal that the trial court only erred in denying the motions to suppress at particular stages, then proof of which images were discovered at each stage might be a relevant consideration on remand, but it is not a relevant consideration for purposes of this appeal.

### 2. Standard of Review

▪ We review a trial court's ruling on a motion to suppress under an abuse of discretion standard. *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997). We view the evidence in the light most favorable to the trial court's ruling, and we afford almost total deference to the trial court's determination of historical facts that the record supports, especially when the fact findings are based on an evaluation of the witnesses' credibility and demeanor. *Id.* We review *de novo* the court's application of the law to the facts. *Id.*

### 3. Reasonable Expectation of Privacy

The trial court entered written conclusions of law, stating, "In this case, defendant lost [his] expectation of privacy not only when he voluntarily turned over his computer to the repair shop for analysis, but more specifically when he made the specific request (which is acknowledged by the defendant in his own statement) that all the jpeg files (photos) be backed up. This action seems to indicate the defendant did not seek to preserve the pictures as private. Secondly, it can be said that upon delivering the computer to the repair shop for analysis/repair, society would not recognize as reasonable the expectation of privacy when the defendant voluntarily conveyed the computer to a third party for unknown malfunction which required accessing the hard drive and in turn, requiring further work and access which was ultimately given by the defendant, thus extinguishing any reasonable expectation of privacy in the jpegs files (photos) found within the defendant's computer."

Rogers contends that the trial court erred in concluding that he had lost his reasonable expectation of privacy in his computer and in his jpeg files. Rogers asserts that the owner of the computer repair shop testified that computer owners who bring their computers into his shop have a right to privacy. Rogers also emphasizes that he did not sign any written authorization permitting the computer repair technician to view his files during the repair or back up process.

▪ The purpose of both the Fourth Amendment and Article I, section 9 of the

Texas Constitution is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996). An accused has standing to challenge the admission of evidence obtained by an intrusion by the government or a private individual only if he had a legitimate expectation of privacy in the place invaded, and the accused has the burden of proving facts to establish this expectation. *Id.; see also Chavez v. State,* 9 S.W.3d 817, 819–20 (Tex.Crim.App.2000) (noting standing required to challenge seizure under article 38.23 of the Texas Code of Criminal Procedure). To carry this burden, the accused must normally prove: (a) that by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (b) that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable. *Id.*

In *United States v. Barth,* the defendant called a computer technician after experiencing problems with his office computer. 26 F.Supp.2d 929, 932 (W.D.Tex.1998). As the computer technician began opening individual files in search of potential viruses, he came across a file containing child pornography. *Id.* The court concluded that protection of closed computer files and hard drives is similar to the protection afforded a person's closed containers and closed personal effects. *Id.* at 937. The court then reasoned, "[o]utside of automobile searches, a warrant is usually required to search the contents of a closed container, because the owner's expectation of privacy relates to the contents of that container rather than to the container itself." *Id.* The court held that the defendant did not lose his reasonable expectation of privacy in his closed individual computer files when he gave the hard drive to a third party to repair because he gave the hard

drive to the technician "for the limited purpose of repairing a problem unrelated to specific files and also expected that he would have the unit back the following morning to continue his business." *Id.*

In its conclusions of law in this case, the trial court expressly distinguished *Barth,* because Rogers specifically requested that his jpeg files be backed up which were the specific files containing the child pornography. We agree with the trial court that our case is factually distinguishable from *Barth* because Rogers expressly directed the computer technician to back up the jpeg files.

The evidence established that Rogers had a subjective expectation of privacy in his jpeg files; therefore, the question is whether society is prepared to recognize that expectation as objectively reasonable. The Texas Court of Criminal Appeals has held that the following factors are relevant to the court's determination of whether the accused's subjective expectation was one that society was prepared to recognize as objectively reasonable: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Villarreal,* 935 S.W.2d at 138. These factors are more applicable when discussing the expectation of privacy in a place than in discussing the expectation of privacy in a computer hard drive or even a closed container. However, applying the more relevant factors would weigh against a finding of objective reasonableness.

For example, although Rogers had an interest in the computer hard drive, he did not have complete dominion or control because he had voluntarily relinquished control to the computer repair store. In addition, Rogers did not take normal precautions to protect his privacy because he expressly directed the computer repair technician to back up the jpeg files. Finally, his claim of privacy is not consistent with historical notions of privacy. The courts have generally held that a person has no legitimate expectation of privacy in information that is voluntarily turned over to third parties. *State v. Hardy,* 963 S.W.2d 516, 524 (Tex.Crim. App.1997); *Martinez v. State,* 880 S.W.2d 72, 76 (Tex.App.-Texarkana 1994, no pet.). In requesting that the computer repair technician back up the jpeg files, Rogers voluntarily turned those files over to the technician for backing up, and standard operating procedure required the files to be viewed during that process. Therefore, after Rogers directed the computer technician to back up his jpeg files, he no longer had a legitimate expectation of privacy in those files, and the trial court did not err in denying Rogers's motions to suppress.

### MOTION TO DISMISS

Rogers also contends that the trial court erred in denying his motion to dismiss because actions taken by an Assistant United States Attorney ("AUSA") with regard to the trial court's order authorizing Rogers' attorneys to independently analyze the computer hard drive interfered with his right to a fair trial, his right to effective assistance of counsel, his right to due process and due course of laws, and his Tenth Amendment rights.

The trial court entered findings of fact and conclusions of law after the hearing on the motion to dismiss. A trial judge had entered an order directing that a defense expert be given access to and allowed to prepare a cloned copy of the computer hard drive. The expert was permitted to prepare a mirror image of the hard drive in accordance with the order, and the expert left with the mirror image. A detective previously had spoken with an FBI agent about his concern in allowing the copy to leave police custody. The FBI agent contacted an AUSA. The AUSA called defense counsel and informed him that the AUSA believed that obtaining and retaining the mirror image would be grounds for federal prosecution because federal law did not contain an exception for discovery in criminal cases. The AUSA did not threaten prosecution.

Defense counsel contacted the expert and instructed him to return the mirror image. The expert testified that he could work at the sheriff's office to examine the hard drive, and the State agreed to give the expert full access at the sheriff's office. Although the expert stated that defense counsel normally was not present when he conducted his examination, the State agreed that defense counsel could be present if the hard drive was examined at the sheriff's office. The decision to return the cloned hard drive was made by defense counsel after his telephone conversation with the AUSA.

The trial court concluded that the defense counsel had been given access to the hard drive by the trial judge, but defense counsel elected not to place themselves at risk of prosecution under federal law. The trial court further concluded that the State had offered defense counsel a level of cooperation regarding discovery efforts that would allow access as fully as if defense counsel had the mirror image in its possession. The trial court finally concluded that every reasonable accommodation to allow defense counsel to defend Rogers without

exposing them or their expert to federal violations had been offered.

■ We review the trial court's denial of Rogers's motion to dismiss under an abuse of discretion standard. *See Jordan v. State,* 56 S.W.3d 326, 329 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). If there was no violation of Rogers's constitutional rights, or if Rogers's rights were violated but dismissal of the indictment was not necessary to neutralize the taint of the unconstitutional action, then the trial court did not abuse its discretion in denying the motion to dismiss. *State v. Terrazas,* 962 S.W.2d 38, 42 (Tex.Crim.App. 1998); *see also State v. Frye,* 897 S.W.2d 324, 330 (Tex.Crim.App.1995) (dismissal not warranted if trial court able to "identify and neutralize the taint" by other means).

■ In this case, assuming, without deciding, that Rogers's rights were violated based on the actions of the AUSA, the trial court concluded that dismissal of the indictment was not necessary because defense counsel were accommodated in their discovery by other means. *See United States v. Kimbrough,* 69 F.3d 723, 730–31 (5th Cir.1995) (finding government's offer to make child pornography materials available for inspection but not for copying to be a reasonable accommodation). We hold that the trial court did not abuse its discretion in reaching this conclusion.

### Conclusion

The judgment of the trial court is affirmed.