Affirmed and Opinion filed August 25, 2005









Affirmed and Opinion filed August 25, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00147-CR

____________

 

LANNY LOWN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 179th
District Court

Harris County, Texas

Trial Court Cause No. 961,173

 



 

O P I N I O N

Appellant, Lanny Lown, was convicted by a
jury of theft of property of the aggregate value of over $200,000.  The trial court assessed punishment at
incarceration for life in the Texas Department of Criminal Justice,
Institutional Division, and a $10,000 fine. 
In his sole issue on appeal, appellant complains that the trial court
erred in admitting into evidence computer data disks allegedly obtained in
violation of the Fourth Amendment and in allowing testimony about the contents
of the disks.  We affirm.








From May 2001 through March 12, 2003,
appellant engaged in a Ponzi scheme via an entity known as One West Financial
Services that involved the alleged purchase of titanium and other metals
through fictitious contracts with the United States government.[1]  Appellant lured potential investors into investing
in his scheme by telling them that One West had long-term contracts with the
U.S. government to purchase metals, including titanium, which were mined and
forged in New Guinea for use in the production of U.S. Navy submarines.  Claiming the information was secret,
appellant would not reveal to investors the contracts with the government or
the name of the forge in New Guinea. 
However, appellant did tell investors that his purported contact with
the government was Admiral Steven Morgan. 
Appellant perpetuated this charade by claiming to receive calls from
Admiral Morgan on his cell phone. 
Appellant would pretend to converse with Admiral Morgan in front of
other people and then after hanging up, he would inform whoever was present
that the person on the other end was Admiral Morgan.  

The Pentagon has a website that provides
biographies for all Navy flag officers. 
After appellant told Charles Harper, an investor in his scheme, that
Admiral Morgan was his contact person with the government, Harper found his
biography on the Internet.  Harper
testified that Admiral Morgan=s biography
contained information about submarine and supply activities, which, to Harper,
fit the investment perfectly and gave Harper confidence in the investment.  After appellant was arrested, Harper spoke to
Admiral Morgan and determined he had had no contact with appellant.  Harper passed this information on to the Harris
County District Attorney=s Office.  








Admiral Morgan testified that he had never
heard of appellant or One West until he was contacted by the Harris County
District Attorney=s Office in 2003.  He explained that titanium is not even used
in the production of U.S. Navy submarines. 
Admiral Morgan=s command was responsible for purchasing
spare parts, not commodities or raw materials for use in the manufacture of
vessels.  In fact, quantities of
materials sufficient to build a vessel are acquired by the contractor that
manufactures the vessel; therefore, any contracting for the acquisition of raw
materials would be done by the contractor building the vessel.  

From May 23, 2001, through March 12, 2003,
appellant=s victims invested $14,987,000 in his
fraudulent titanium venture using funds from various sources, including 401(k)
retirement accounts, mortgages, and student loans.  Of that $14,987,0000, $4,616,564.71 was paid
directly or indirectly[2]
back to investors, while $9,010,357.88 was spent on appellant, his family, and
his friends, including $1,426,000 on cars, $1,118,000 on credit cards,
$1,615,000 on jewelry, $773,000 on homes, $349,000 on artwork, $101,000 on
pools, $358,000 on office and home furniture, $44,000 on travels, and $60,000
on charter jets.  Appellant also withdrew
$235,000 in cash.  

Appellant was arrested on March 12, 2003,
for the sale of unregistered securities, and a search warrant for appellant=s home and One
West=s offices was
executed on March 13 and 14, 2003.  After
the District Attorney=s office examined the documents seized
pursuant to the search warrant, appellant was arrested a second time on March
26, 2003, for theft.  Two additional
search warrants were issued on April 4 and 7, 2003.  

                                        Expectation of Privacy








In his sole issue in this appeal,
appellant claims the trial court erred in admitting into evidence computer data
disks that were obtained by the Harris County District Attorney=s Office in
violation of the Fourth Amendment and in allowing testimony about the contents
of the disks.  Allan Madar, a witness
called by the State, testified that appellant=s assistant, Lori
Franz, asked him to back up the data on One West=s computer
system.  When Madar backed up the system,
he made two sets of disks, keeping one set with the knowledge of Franz.  The backup disks were not seized pursuant to
any search warrant or subpoena.  Instead,
Madar turned the disks over to the District Attorney=s office when the
prosecutor contacted him and requested the disks.

Before the State called Madar to testify, a discussion
about the backup disks was held outside the presence of the jury.  The prosecutor explained that the backup
disks were not obtained as a result of any search of One West=s offices, but
were made at appellant=s request. 
The prosecutor also stated that the District Attorney=s office did not
subpoena the disks from Madar:

MR. BASS [Counsel for
appellant]:  Judge, before they=re brought in, this next witness, I
believe, is going to testify about making backups of computers, I believe.  If we could agree those computers were seized
during the search of Mr. Lown=s office.

MS. STROUD [Prosecutor]:  These backup disks have nothing to do with
the search, however.  They were done
before the computers were ever seized.

MR. BASS:  But they were done pursuant to the search
warrant.

MS. STROUD:  Not these, no.  They were done pursuant to his request, your
client=s.

MR. BASS:  My client requested B 

MS. STROUD:  That work be done on his computers.  They backed the computers up before they did
the work, and these are B 

THE COURT:  He was having his computer serviced by a
company and requested backups and the company kept the backups?

MS. STROUD:  The company kept a second copy of the
backups.

THE COURT:  Okay.

MR. BASS:  And y=all subpoenaed those?

MS. STROUD:  No.








The trial court then allowed appellant=s counsel to voir
dire Madar out of the presence of the jury. 
The voir dire examination essentially concerned whether anyone at One
West had authorized Madar to make copies of the backup disks or to take a set
of disks from One West=s office. 
Madar responded that Lori Franz, appellant=s assistant, had
authorized him to make copies of the backup disks and to take the copies with
him.  Following the voir dire examination
of Madar, appellant=s counsel lodged the following objection
based on the backup disks being acquired without appellant=s consent:

My objection would
be, Your Honor, that these copies were not acquired with the consent of Mr.
Lown, the owner of the company, and that, therefore, that property was acquired
without the effective consent of the owner in violation of Texas law and should
be suppressed under Article 28.33 [sic] of the Code of Criminal Procedure.

The trial court overruled appellant=s objection.  Madar then testified in the presence of the
jury that Charles Harper, one of the investors in appellant=s titanium scheme,
is his boss at Air Liquide America. 
Harper asked Madar to upgrade and maintain One West=s computer
system.  He initially looked at One West=s system on
December 4, 2002, but did not perform the backup until March 14, 2003.  Franz told Madar that appellant wanted to
make sure all the servers were backed up. 
When he backs up a computer system, Madar puts all the data on a tape or
DVD, so if something happens, he can go back to the DVD and restore the server
to its prior state.  In this case, Madar
saved all the information stored on the server to DVDs so that it could be
retrieved later if necessary.  Madar made
two sets of disks and told Franz that he was going to keep one set in case
anything happened to the other set. 
Madar held the second set of disks for One West as One West=s property.  He later turned the set of backup disks he
was holding over to the District Attorney=s office, not
pursuant to a warrant or subpoena, but at the request of the prosecutor.  

During the State=s examination of
Madar, appellant=s counsel again questioned Madar on voir
dire, eliciting testimony that Madar did not see appellant at One West=s offices on the
day he backed up the system.  Upon the
conclusion of the voir dire examination, appellant=s counsel
reiterated his previous objection to the backup disks:

I have the same objections I previously made, Your Honor,
but no additional objections to State=s 84 through
89.  








The trial court overruled appellant=s objection.  

At the conclusion of Madar=s testimony, and
after the trial court had excused the jury, appellant=s counsel objected
again and moved to strike the exhibits for the first time based on a
warrantless search:

Now comes the
defendant, and we move the Court to strike from the record State=s Exhibits 84, 85,
86, 87, 88 and 89 on the grounds that said exhibits were acquired through an illegal
search without a warrant.  Mr. Madar
testified that he was holding that property, obviously as an agent for One West
Financial.  It was their property.  And he turned it over at the request of the
District Attorney=s Office without a warrant, without a
subpoena.  And so we would ask that the
Court strike those exhibits and exclude them from evidence in this case, the
jury having not been privy to any of its content at this juncture.

The trial court deferred ruling on appellant=s objection.  When court resumed, appellant=s counsel again
objected on the basis of a warrantless search:

With reference to State=s Exhibits 84
through 89, we object on the grounds that they were acquired through an illegal
search and seizure without a warrant without even a subpoena.  They were turned over because of the District
Attorney asking an agent to turn them over.

The
State responded:

 . . . Your Honor, Mr. Lown has no standing to
argue the search, whether it=s legal or otherwise. 
And, in fact, if you wish to deem it a search, it was certainly a search
by consent, which is an exception to the warrant requirement.

The bottom line is if he wants to call it
a search, whether it be legal or otherwise, Mr. Lown has no standing to argue
it.  Those tapes were given to Mr. Madar
to take for his care, custody and control.

The trial court overruled appellant=s objection.[3]  








To preserve an error in the admission of
evidence, the defendant must make a timely and specific objection.  Martinez v. State, 22 S.W.3d 504, 507
(Tex. Crim. App. 2000).  A motion to
strike must also be made in a timely fashion. 
Rhoades v. State, 934 S.W.2d 113, 127 (Tex. Crim. App.
1996).  An objection is timely if it is
made as soon as the ground for the objection becomes apparent, i.e., Aas soon as the
defense knows or should know that an error has occurred.@  Hollins v. State, 805 S.W.2d 475, 476
(Tex. Crim. App. 1991).  

As described above, prior to Madar=s taking the
stand, the prosecutor informed the trial court and appellant=s counsel that the
backup disks had Anothing to do with the search,@ but, instead,
were made pursuant to appellant=s request and One
West allowed Madar to keep a second copy of the backup disks.  Thus, at this point, the basis for the
objection, which appellant now brings on appeal, became apparent.  However, while appellant=s counsel objected
on the basis that the copies of the backup disks were not acquired with
appellant=s consent, he waited until after Madar had
testified to object on the basis of an allegedly illegal warrantless search and
to strike the exhibits.  See Rhoades,
113 S.W.2d at 127 (holding that motion to strike was untimely because basis for
motion became manifest when State elicited complained-of testimony).[4]  Thus, this issue has not been preserved for
appellate review.  








Even if appellant had preserved his
complaint on appeal, we find the trial court did not abuse its discretion in
admitting the backup disks into evidence. 
A trial court=s ruling on the admissibility of evidence
is reviewed under the abuse-of-discretion standard.  Willover v. State, 70 S.W.3d 841, 845
(Tex. Crim. App. 2002).  The appellate
court will not reverse the trial court=s evidentiary
ruling if it was within the zone of reasonable disagreement.  Montgomery v. State, 810 S.W.2d 372,
391 (Tex. Crim. App. 1991) (opinion on reh=g).  Therefore, we must uphold the trial court=s ruling if it is
reasonably supported by the record and is correct under any theory of law
applicable to the case.  Willover,
70 S.W.3d at 845. 

AThe purpose of
both the Fourth Amendment and Article I, ' 9, >is to safeguard an
individual=s legitimate expectation of privacy from
unreasonable governmental intrusions.=@  Villarreal v. State, 935 S.W.2d 134,
138 (Tex. Crim. App. 1996) (quoting Richardson v. State, 865 S.W.2d 944,
948 (Tex. Crim. App. 1993)).  A defendant
has standing to challenge a search under the Fourth Amendment if he had a
legitimate expectation of privacy in the place subject to intrusion by the
government.  Granados v. State, 85
S.W.3d 217, 222B23 (Tex. Crim. App. 2002), cert. denied,
538 U.S. 927 (2003).  Because the accused
has greater access to relevant evidence, he bears the burden of proving facts
establishing a legitimate expectation of privacy.  Villarreal, 935 S.W.2d at 138.  The defendant can meet his burden by proving
(1) that by his conduct, he exhibited an actual subjective expectation of
privacy, i.e., a genuine intention to preserve something as private; and (2)
that circumstances existed under which society was prepared to recognize his
subjective expectation as objectively reasonable.  Id. 
The following factors, although not exhaustive, are relevant to a
determination of whether the defendant=s claim of privacy
is objectively reasonable: (1) whether the accused had a property or possessory
interest in the place invaded; (2) whether he was legitimately in the place
invaded; (3) whether he had complete dominion or control and the right to
exclude others; (4) whether, prior to the intrusion, he took normal precautions
customarily taken by those seeking privacy; (5) whether he put the place to
some private use; and (6) whether his claim of privacy is consistent with
historical notions of privacy.  Granados,
85 S.W.3d at 223.  We are instructed to
examine the circumstances surrounding the search in their totality.  Id. 









Appellant contends he had a reasonable
expectation in the information contained in his computer files just as a
reasonable expectation of privacy exists in the contents of closed containers[5]
and digital storage devices.[6]  In support of his claim, appellant relies on United
States v. Barth, 26 F. Supp. 2d 929 (W.D. Tex. 1998).  In Barth, when the defendant began
experiencing problems with his office computer, he called a computer
technician, Kellar.  Id. at
932.  Kellar picked up the hard drive
portion of the defendant=s computer from his office and took it
home with him to work on it because the defendant wanted it returned by the
following morning.  Id.  Kellar started opening individual files in
search of potential viruses and came across a jpeg picture file.  Id. 
When he opened the file, Kellar, who was also a confidential informant
for the FBI, observed what appeared to be child pornography.  Id. 
Kellar contacted his supervising agent at the FBI, who instructed him to
copy all of the files on the hard drive. 
Id.  Following this
conversation, Kellar opened more files, finding more images of child
pornography.  Id. at 932B33.  The next morning, Kellar took the hard drive
to the Odessa Police Department where officers viewed the child pornography
files.  Id. at 933.  

The court in Barth found that by
placing data files in a storage device such as his hard drive, the defendant
manifested a reasonable expectation of privacy in the contents of those
files.  Id. at 936B37.  The court further determined the defendant
did not lose his reasonable expectation of privacy in his closed, individual
files when he gave the hard drive to Kellar because he gave it to him for the
limited purpose of repairing a problem unrelated to specific files and also
expected that he would have the hard drive returned to him the following
morning.  Id. at 937.  








Appellant argues that while he may have
given up a certain right to privacy by the fact that the backup disks exist
just as a person may give up certain rights about the size or shape of a
container, he still had a legitimate expectation of privacy in the information
contained in those computer files that society recognizes as valid.  Appellant argues the sole purpose of backing
up the data was so that it could be stored in a separate place in case the
files at the office were damaged. 
Appellant maintains there is no indication that he or anyone at One West
expected that the files would be opened and reviewed by others, particularly
law enforcement officers without a warrant. 


The State argues Barth is not
applicable because unlike this case, the computer technician in Barth,
who was also a government informant, did not have authority to open files
unrelated to repairs to the computer left with him for that purpose.  Here, the express purpose of Madar=s actions was to
back up the entire system, which, the State asserts, presumably would involve
viewing all files on it.  

The State further argues this case is
factually more like Rogers v. State, 113 S.W.3d 452 (Tex. App.CSan Antonio 2003,
no pet.).  In Rogers, the
defendant took his computer to a computer repair store when it was not
functioning properly.  Id. at
454.  The technician determined the
computer system had a virus, which had corrupted many areas of the computer
system, including the backup, and advised the defendant that his only option
was to wipe the hard drive and reload it. 
Id. at 455.  The defendant
specifically requested that all jpeg files be backed up.  Id. 
The proper procedure in the computer repair industry requires
verification of data that has been backed up so that the customer will only be
charged for work properly performed.  Id.  The technician was required to double check
the information being backed up.  Id.  In conducting the verification process, the
technician detected some photographs he believed were child pornography.  Id. 









The court of appeals in Rogers held
the defendant had a subjective expectation of privacy in his jpeg files.  Id. at 457.  Therefore, the question in Rogers was
whether society is prepared to recognize that expectation as objectively reasonable.  Id. 
The court of appeals explained that although the defendant had an
interest in the computer hard drive, he did not have complete dominion or
control over it because he had voluntarily relinquished control to the computer
repair store.  Id. at 458.  The Rogers court also observed that
the defendant did not take normal precautions to protect his privacy because he
expressly directed the computer repair technician to backup the jpeg
files.  Id.  Finally, the court determined the defendant=s claim of privacy
was not consistent with historical notions of privacy because a person has no
legitimate expectation of privacy in information that is voluntarily turned
over to third parties.  Id.  

Thus, by requesting that the computer
repair technician back up the jpeg files, the Rogers defendant
voluntarily turned those files over to the technician for backing up, and the
standard operating procedure required the files to be viewed during the
process; therefore, after the defendant directed the computer technician to
back up his jpeg files, he no longer had a legitimate expectation of privacy in
those files.  Id.  

Appellant argues Rogers is
distinguishable because the defendant had specifically asked the technician to
back up the files at issue and it was Astandard operating
procedure@ to view the files during the back up
process.  Appellant argues that unlike in
Rogers, there is no indication in this case that it was Astandard operating
procedure@ to view the files in question or that
anyone looked at the files until an investigator for the District Attorney=s office did
so.  








Even if appellant showed that he had a
subjective expectation of privacy in the information stored on the computer
system located in One West=s offices, he has
not shown that any such expectation of privacy, under the facts of this case,
is one that society accepts as objectively reasonable.  There is no evidence that any of the files
were the subject of a confidentiality agreement or that any measures had been
taken to preserve or protect the documents from disclosure.  Appellant did not show that he owned the
computers in One West=s offices or that he owned One West rather
than being a One West employee. 
Moreover, as the State points out, there is no evidence indicating that
appellant=s assistant, Lori Franz, lacked authority
either to request that Madar back up the entire computer system for One West or
to give him permission to take a set of copies of the backup disks.  Therefore, appellant failed to demonstrate
that he had either a property or possessory interest in, or complete dominion
or control over, the computers in One West=s offices.  

Furthermore, there is no evidence
demonstrating that appellant took any precautions (such as encryption) to
protect his privacy in the information contained on the computer system.  Indeed, the evidence showed that appellant
wanted the computer system at One West backed up, but not that he took steps to
maintain the confidentiality of the information contained in the system.  Finally, actions in requesting that the
system be backed up and allowing Madar to keep copies of the backup disks are
not consistent with historical notions of privacy.  See Rogers, 113 S.W.3d at 458
(explaining that when defendant directed computer technician to back up jpeg
files, he no longer had legitimate expectation of privacy in those files).  

Having failed to show that he has a
subjective expectation of privacy that society is prepared to recognize as
objectively reasonable, we conclude appellant does not have standing to
challenge the acquisition of the backup disks by the State.  Therefore, even if appellant had properly preserved
error, his argument would have no merit because the trial court did not abuse
its discretion in denying appellant=s motion to
strike.  Appellant=s sole issue in
this appeal is overruled. 

Accordingly, the judgment of the trial
court is affirmed.  

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment
rendered and Opinion filed August 25, 2005.

Panel
consists of Justices Anderson, Hudson, and Frost.

Publish
C Tex. R. App. P. 47.2(b).











[1]  David Pliant,
a fraud examiner for the Harris County District Attorney=s Office, testified that a Ponzi scheme is a theft in
which the early investors= money is rapidly spent or misused, and later
investors= money is used to pay a small return to the first
investors.  Payments have to be made in
order to keep new money coming inCwhen the
first investors are receiving a return, additional investors will put up money
believing they also will see a return on their investment.  The theft occurs when the victim gives his
money to the perpetrator, not when it is spent.

 





[2]  One West had made arrangements with
some of its investors to pay mortgages and bills for those investors rather
than paying them directly.  





[3]  A computer
forensic examiner for the Harris County District Attorney=s Office, William Brown, testified that there was no
data on the computer system seized from One West=s
offices on April 4, 2003, because either a new hard drive had been installed or
the servers had been Awiped with a software.@  Brown explained that this could not have
happened accidentally, but that Asomeone
had gone in there and wiped of [sic] the data off of the desktops and more than
likely replaced the server hard drives with brand-new ones@ between March 14, 2003, when Madar created the backup
disks, and April 4, 2003, when the computers were seized.  Brown found no reference on the backup disks
or the computer seized from appellant=s home
to any government contracts, overseas bank accounts, the actual purchase of
metals, Admiral Morgan, or a forge in New Guinea. 





[4]  The Court of
Criminal Appeals has observed that while the proper time for an objection is
generally when the evidence is admitted, there may be circumstances under which
the grounds for objection are not present until after the evidence has been
admitted and, thus, the proper time for an objection may not arise until
then.  Johnson v. State, 878
S.W.2d 164, 167B68 (Tex. Crim. App. 1994).  However, that was not the situation in this
case, where the basis of the objection or the motion to strike was apparent
prior to the admission of the backup disks into evidence and Madar=s testimony.  





[5]  See United
States v. Ross, 456 U.S. 798, 822B23
(1982) (A[T]he Fourth Amendment provides protection to the
owner of every container that conceals its contents from plain view.@).





[6]  See United
States v. Reyes, 922 F. Supp. 818, 832B33
(S.D.N.Y. 1996) (finding that defendant had reasonable expectation of privacy
in contents of pager=s memories); United States v. Chan, 830 F.
Supp. 531, 535 (N.D. Cal. 1993) (finding that defendant had reasonable
expectation of privacy in contents of pager=s
memory); United States v. Blas, 1990 WL 265179, at *21 (E.D. Wis. Dec.
4, 1990) (finding that individual has same expectation of privacy in pager,
computer, or other electronic storage and retrieval device as in closed
container).