NUMBER 13-06-519-CR



COURT OF APPEALS


 

THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


THE STATE OF TEXAS, Appellant,


v.



DAVID MALDONADO, Appellee.

 


On appeal from the 347th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Benavides, and Vela


Memorandum Opinion by Justice Benavides



 The State appeals from the trial court's granting of David Maldonado's request for
suppression of any statement made by him as a result of a custodial interrogation. See
TEX. CRIM. PROC. CODE ANN. art. 44.01(e) (Vernon 2006). The issues before this court are
(1) under what circumstances a suspect may communicate with the police absent counsel
after the attorney-client relationship has attached, and (2) whether the appellee's actions
while in custody constituted an initiation of communication with the police. We reverse and
remand.

I. FACTUAL AND PROCEDURAL BACKGROUND

 On May 4, 2006, David Maldonado, the appellee, was indicted for indecency with
a child. On May 8, the trial court appointed attorney Grant Jones to represent Maldonado
in accord with Maldonado's request for counsel. Maldonado first met with counsel on May
10. 

 Detective Sergio Ramirez went to the jail on May 9, 2006, to speak with Maldonado. 
At that time, Detective Ramirez was unaware that counsel had been appointed for
Maldonado or that Maldonado had been indicted. Detective Ramirez requested that
Maldonado be brought out to a large open area in the jail used for processing new arrivals. 
The detective introduced himself to Maldonado. Maldonado immediately handed Detective
Ramirez a folded letter and said that he had been waiting to talk to somebody. Maldonado
had voluntarily written the letter before his meeting with Detective Ramirez without
prompting from the police. The detective asked Maldonado about the contents of the
letter. Maldonado responded, "That's what happened that night." The detective then
asked, "You want to talk to me about what happened that night?" Maldonado said "Yes." 
The detective asked Maldonado if he wanted to go to the station, and Maldonado agreed. 
At the Corpus Christi police station, the detective took Maldonado's statement by video. 
Prior to the conversation, Maldonado was advised of his Miranda rights, which he waived. 

 Maldonado filed a Motion for Discovery of Statements and for Preliminary Hearing. 
Included within this Motion was a broad request for suppression of any statement made
by Maldonado as a result of custodial interrogation. The trial court suppressed fruits of this
interrogation, conducted after counsel had been appointed but before counsel had met with
Maldonado. The State filed its notice of appeal and was granted an emergency motion for
stay of proceedings pending the disposition of the State's appeal in this case. See TEX.
CRIM. PROC. CODE ANN. art. 44.01(e).

II. STANDARD OF REVIEW

 A trial court's ruling on a motion to suppress is generally reviewed for abuse of
discretion. State v. Reyna, 89 S.W.3d 128, 130 (Tex. App.-Corpus Christi 2002, no pet.)
(referencing Ford v. State, 26 S.W.3d 669, 672 (Tex. App.-Corpus Christi 2000, no pet.)). 
The reviewing court may not disturb findings of fact absent a clear showing of abuse of
discretion. State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 

 Mixed questions of law and fact which do not turn on the credibility or demeanor of
the witness are reviewed de novo. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997). The only issues to be determined here are under what circumstances the suspect
may communicate with police absent counsel after the attorney-client relationship has
attached and what acts and statements constitute an "initiation" of communication between
a suspect and the police. As mixed questions of law and fact, these must be reviewed de
novo. Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (citing Carmouche v.
State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)).

III. APPLICABLE LAW AND ANALYSIS

A. Suspect communication with police absent counsel when Fifth and Sixth
Amendment rights have attached



 An accused who has expressed a desire to deal with the police only through counsel
is not subject to further interrogation until counsel has been made available, unless the
accused "initiates further communication, exchanges, or conversations with the police." 
Edwards v. Arizona, 451 U.S. 477, 485 (1981) (1). If the police initiated the communication,
then any subsequent waiver of counsel is invalid, whether it is knowing or voluntary. 
Holloway v. State, 780 S.W.2d 787, 789-90 (Tex. Crim. App. 1989). If, however, the
suspect initiates communications with the police and subsequently waives his Fifth
Amendment rights, then interrogation without counsel is constitutional. Id. at 789. 

 The record reflects that Maldonado asked for counsel to assist him, and counsel
was appointed to him on May 8, 2006. There is a two-pronged test to determine whether
a suspect has waived his previously invoked right to counsel. "The first step requires proof
that the suspect himself initiates further communication with the authorities after invoking
the right to counsel. The second step requires proof that, after he reinitiates
communication with the authorities, the suspect validly waives his right to counsel." Cross
v. State, 144 S.W.3d 521, 527 (Tex. Crim. App. 2004) (following Oregon v. Bradshaw, 462
U.S. 1039, 1044-46 (1983)). 

 After being transported to the police station following his initial encounter with the
Detective, Maldonado was informed of his Miranda rights, which he indicated he
understood. He then waived those rights, including his right to have counsel present at the
questioning. The video interrogation followed. Maldonado now asserts, however, that
once the Sixth Amendment right has been attached, any unilateral waiver of that right is
invalid. Maldonado cites a number of cases to buttress this argument. 

 First, Maldonado cites Holloway v. State for the proposition that a unilateral waiver
of the Sixth Amendment right to counsel was invalid. 780 S.W.2d at 796. In Holloway, the
suspect had asserted his right to counsel and met with counsel. Later, after being read his
Miranda rights, the suspect stated in response to a police-initiated interrogation that he did
not want his attorney. The court allowed the suspect's statement to be suppressed, but
not because a unilateral waiver of Sixth Amendment rights is impermissible; rather
because waiver is invalid when communication is initiated by the police. Id. at 796. 
Holloway, therefore, does not hold that waiver of Sixth Amendment rights is invalid when
communications are initiated by the suspect. Id. at 789. 

 Maldonado also cites Upton v. State, in which the court held that "police may initiate
interrogation only through notice to defense counsel." 853 S.W.2d 548, 557 (Tex. Crim.
App. 1993). While the law cited here is correct, Maldonado fails to appreciate that, like
Holloway, Upton allows for suspect-initiated conversations with the police. Id. at 552 (citing
Edwards, 451 U.S. at 484-85). 

 In support of the argument that absent permission from defense counsel, officers
cannot approach the defendant and solicit his waiver, Maldonado cites two cases: Cloer
v. State, 88 S.W.3d 285 (Tex. App.-San Antonio 2002, no pet.) and Flores v. State, 49
S.W.3d 29 (Tex. App.-San Antonio 2001, pet. ref'd). Maldonado again fails to note,
however, that these cases are similar to Holloway and Upton, because both courts held
that the accused who was represented by counsel could voluntarily choose to initiate
communication with the police and the subsequent waiver was not invalid. Cloer, 88
S.W.3d at 288 (referring only to police-initiated interrogation as requiring notice to defense
counsel); Flores, 49 S.W.3d at 33 ("Importantly, however, the Sixth Amendment does not
prevent an accused who is represented by counsel from voluntarily choosing to initiate
conversation with the police."). 

 The law is clear that a defendant may waive his Fifth and Sixth Amendment rights,
provided he has voluntarily initiated communication with the police.

B. Suspect's actions as initiation of communication with the police

 The controlling issue here is whether the police or Maldonado initiated the
communication that led to the confession. The chain of events is undisputed and the only
question is whose actions "initiated" communication. The United States Supreme Court
has defined "interrogation" as follows:

 [T]he term "interrogation" under Miranda refers not only to express
questioning, but also to any words or actions on the part of the police (other
than those normally attendant to arrest and custody) that the police should
know are reasonably likely to elicit an incriminating response from the
suspect. The latter portion of this definition focuses primarily upon the
perceptions of the suspect, rather than the intent of the police. This focus
reflects the fact that the Miranda safeguards were designed to vest a suspect
in custody with an added measure of protection against coercive police
practices, without regard to objective proof of the underlying intent of the
police. A practice that the police should know is reasonably likely to evoke
an incriminating response from a suspect thus amounts to interrogation. But,
since the police surely cannot be held accountable for the unforeseeable
results of their words or actions, the definition of interrogation can extend
only to words or actions on the part of police officers that they should have
known were reasonably likely to elicit an incriminating response. 


Rhode Island v. Innis, 446 U.S. 291, 301 (1980). The Texas courts have reiterated this
definition:

 [T]he question of whether police words or conduct is an interrogation is
viewed from the perspective of the accused, and the intent of the police is
relevant only to the extent it relates to whether the officer knew or should
have known she would elicit an incriminating response.


Russell v. State, 215 S.W.3d 531, 535-36 (Tex. App.-Waco 2007, pet. ref'd) (referencing
Rhode Island v. Innis, 446 U.S. at 301); see also Zhi Jun Xu v. State, 191 S.W.3d 210,
215-16 (Tex. App.-San Antonio 2005, no pet.). It is undisputed that Maldonado voluntarily
wrote a letter detailing his version of what happened on the night in question. The
undisputed testimony surrounding the Detective's initial encounter with Maldonado follows:

 We arrive, I went up to the jailer and said I am here for David. He said, okay,
we's [sic] got him ready. They brought him out. I introduced myself and told
him I am Detective Ramirez and this is Detective Flores. At that time, he
handed me a letter that was folded. He said, I have been waiting to talk to
somebody, waiting to talk to you, something to that effect, and handed me
the letter. I asked him what is this. He says, that's what happened that
night. So I said, you want to talk to me about what happened and he said
yes.


The Detective then testified that he asked Maldonado, "Do you want to talk about the
incident[?] He said, yes. So I told him we can't talk here. We have to go to the station. 
You want to go[?] He said yes, so we went." Upon cross-examination, the Detective
reiterated that, during his initial encounter with Maldonado, "We talked, just introduced
ourselves that was it." This, as stated above, was followed by Maldonado handing the
Detective the letter. 

 Pursuant to the rule in Rhode Island v. Innis, the police had no reason to know that
their introduction would elicit a response. 446 U.S. at 301. General and routine questions
do not constitute an interrogation. Jones v. State, 795 S.W.2d 171, 174 n.3 (Tex. Crim.
App. 1990) (2); McCambridge V. State, 712 S.W.2d 499, 505 (Tex. Crim. App. 1986). 
Offhand remarks, not designed to elicit any kind of response, do not constitute an
interrogation. Innis, 446 U.S. at 303; Janecka v. State, 739 S.W.2d 813, 828-29 (Tex.
Crim. App. 1987). From Maldonado's perspective, the detective's introduction could not
possibly have amounted to an interrogation. Furthermore, Maldonado volunteered the
letter. He wrote the letter without any prompting from the authorities. After being
introduced to the detective, he stated that he wanted to talk to someone. This was done
not in an interrogation room or otherwise intimidating location that could conceivably have
pressured Maldonado into making an incriminating statement, but an open area used for
processing new arrivals. This satisfies the first prong of the test outlined above in Cross
that the suspect himself initiate further communication with the authorities after invoking
the right to counsel. 144 S.W.3d at 527. Moreover, initiation of communication is an
inquiry representing a willingness and a desire on the part of an accused to open up a
more generalized discussion relating directly or indirectly to the investigation. Bradshaw,
462 U.S. at 1045-46. Maldonado's actions indicate he wanted to open up a discussion
relating either directly or indirectly to the investigation. The detective's subsequent question
of "Do you want to talk about the incident[?]" was merely confirming Maldonado's initial
communication. 


 A number of cases are in accord. In Moran v. State, the court held that a police
officer's statement to the defendant that the officer had previously spoken to several other
people about the case did not constitute an initiation of interrogation. 213 S.W.3d 917
(Tex. Crim. App. 2007). The court based its reasoning on the rule in Rhode Island v. Innis
that the definition of "interrogation" relies on the "perception of the suspect, rather than the
intent of the police." Id. at 923. The defendant testified that he initiated the conversation
because he thought he would be "able to leave." Therefore, the defendant's initiation of
the conversation and subsequent waiver of his rights were constitutionally valid. Moran
can be compared to the instant case because a relatively innocuous statement preceded
defendant's voluntary initiation of communication. Similarly, Maldonado could not interpret
the detective's greeting and introduction as the beginning of an interrogation. Furthermore,
the fact that Maldonado had written a letter beforehand and brought it out with him
suggests that he had every intention of initiating communication with the detective, and he
subsequently did so by handing over the letter and stating that he wanted to talk. 

 Russell v. State is also instructive. In Russell, the court held that even the act of
conducting a physical search of a suspect and escorting him to a patrol car was not likely
to induce an incriminating statement, and therefore, the suspect's ensuing incriminating
statement was admissible. 215 S.W.3d at 536. 

 Murray v. State is especially instructive. 864 S.W.2d 111 (Tex. App.-Texarkana
1993, writ ref'd). In Murray, the suspect was brought into an interrogation room after being
arrested on suspicion of possession of crack cocaine. Id. at 114. While in the interrogation
room, a police officer came in and said, having read the suspect's driver license, "Happy
Birthday." Id. The suspect, in response, made an incriminating statement. Id. The court
ruled that, since the statement was made in response to an innocuous statement which
was unlikely to produce an incriminating response, the statement was allowable in court,
even though the suspect was in the interrogation room. Id. In both these cases the courts
reasoned, just as in Moran, that relatively innocuous actions and statements by the officers
are simply not enough to constitute "initiation" of communications that lead to incriminating
statements. 

 It is worth noting that the United States Supreme Court has outlined the relevant
inquiry into alleged violations of a suspect's Sixth Amendment right to counsel, which
attach at the time that judicial proceedings have been initiated against the suspect, such
as by indictment. Kirby v. Illinois, 406 U.S. 682, 688-89 (1972) (citing Powell v. Alabama,
287 U.S. 45, 57 (1932)). This inquiry is into whether the suspect's statement was
"deliberately elicited." Massiah v. United States, 377 U.S. 201, 206 (1964). This test is
designed to ensure that interrogation is defined broadly enough to protect the suspect's
Sixth Amendment rights, yet at the same time, narrowly enough to allow the State to use
the accused's voluntary statements. Lara v. State, 740 S.W.2d 823, 833 (Tex.
App.-Houston [1st Dist.] 1987, no writ). The Houston Court of Appeals, in applying this
language, has illustrated the contours of the "deliberate elicitation" test:

 The [suspect's] sixth amendment rights would be violated if the officers
interrogated the [suspect], created a situation that they knew or must have
known was likely to elicit an incriminating response from the [suspect], or if
the officers intentionally exploited an opportunity otherwise legitimately
created.


Id. The Sixth Amendment does not bar interrogation after indictment in the absence of
counsel if a defendant knowingly and intelligently waives his right to counsel, which is the
case here. Patterson v. Illinois, 487 U.S. 285, 292 (1988). Given that Maldonado
legitimately waived his rights before the interrogation under scrutiny here, the first scenario
outlined above in Lara v. State does not apply. The next two scenarios do not apply either. 
The actions of the police preceding Maldonado's opening communication with the police
were not actions the police should have known would induce an incriminating response,
nor did the officers exploit an otherwise legitimately created opportunity. 

 Maldonado argues that the police officer's very act of going to the jail for the
purpose of taking his statement constitutes an initiation of interrogation. This, however,
is contrary to law. Rhode Island v. Innis notes that an inquiry into the genesis of an
interrogation must be done "without regard to objective proof of the underlying intent of the
police." 446 U.S. at 301. Likewise, the police did not intentionally create a situation that
was likely to induce Maldonado to make incriminating statements. United States v. Henry,
447 U.S. 264, 274 (1980). Maldonado further argues that, because he had counsel, the
police could not legally even talk to him for the purpose of taking his statement without
notifying his attorney. As discussed above, this too is contrary to law, given that
Maldonado waived his right to have counsel present. Patterson, 487 U.S. at 292; Edwards,
451 U.S. at 484; Holloway, 780 S.W.2d at 789. 

IV. CONCLUSION

 Maldonado's initiation of communication with the police and subsequent waiver of
his Fifth and Sixth Amendment rights were constitutionally valid. The trial court erred in
granting Maldonado's motion to suppress the fruits of the custodial interrogation. 

 The judgment of the district court is REVERSED and this case is REMANDED for
further proceedings consistent with this opinion. 


 __________________________

 GINA M. BENAVIDES

 Justice


Do not publish.

See Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and

filed this the 16th day of August, 2007.

1. It should be noted that the Edwards doctrine--if suspects who have invoked their Miranda right to
counsel initiate further communication and waive their Fifth Amendment rights, then resumption without
counsel is constitutional--has been extended to the Sixth Amendment context by the United States Supreme
Court. Michigan v. Jackson, 475 U.S. 625, 636 (1986).
2. Jones enumerates different broad categories which do not constitute interrogation: routine inquiries,
questions incident to booking, general questions such as "what happened" upon arrival at the scene, and
questions mandated by public safety concerns. 795 S.W.2d at 174, n.3. For example, asking a DWI suspect
"[w]here are you going" does not constitute interrogation. Massie v. State, 744 S.W.2d 314 (Tex. App.-Dallas
1988, pet. ref'd). Asking a suspect where the murder weapon is does not constitute interrogation. DeLeon
v. State, 758 S.W.2d 621, 624-25 (Tex. App.-Houston [14th Dist.] 1988, no pet.).