Lanny LOWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–04–00147–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 25, 2005.

Jeffrey Karl Hale, Houston, for appellant.

Markay Stroud, Houston, for appellee.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, Lanny Lown, was convicted by a jury of theft of property of the aggregate value of over $200,000. The trial court assessed punishment at incarceration for life in the Texas Department of Criminal Justice, Institutional Division, and a $10,000 fine. In his sole issue on appeal, appellant complains that the trial court erred in admitting into evidence computer data disks allegedly obtained in violation of the Fourth Amendment and in allowing testimony about the contents of the disks. We affirm.

From May 2001 through March 12, 2003, appellant engaged in a Ponzi scheme via an entity known as One West Financial Services that involved the alleged purchase of titanium and other metals through fictitious contracts with the United States government.[1] Appellant lured potential inves-

---

1. David Pliant, a fraud examiner for the Harris County District Attorney's Office, testified that a Ponzi scheme is a theft in which the early investors' money is rapidly spent or misused, and later investors' money is used to pay a small return to the first investors. Pay-

tors into investing in his scheme by telling them that One West had long-term contracts with the U.S. government to purchase metals, including titanium, which were mined and forged in New Guinea for use in the production of U.S. Navy submarines. Claiming the information was secret, appellant would not reveal to investors the contracts with the government or the name of the forge in New Guinea. However, appellant did tell investors that his purported contact with the government was Admiral Steven Morgan. Appellant perpetuated this charade by claiming to receive calls from Admiral Morgan on his cell phone. Appellant would pretend to converse with Admiral Morgan in front of other people and then after hanging up, he would inform whoever was present that the person on the other end was Admiral Morgan.

The Pentagon has a website that provides biographies for all Navy flag officers. After appellant told Charles Harper, an investor in his scheme, that Admiral Morgan was his contact person with the government, Harper found his biography on the Internet. Harper testified that Admiral Morgan's biography contained information about submarine and supply activities, which, to Harper, fit the investment perfectly and gave Harper confidence in the investment. After appellant was arrested, Harper spoke to Admiral Morgan and determined he had had no contact with appellant. Harper passed this information on to the Harris County District Attorney's Office.

Admiral Morgan testified that he had never heard of appellant or One West until he was contacted by the Harris County District Attorney's Office in 2003. He explained that titanium is not even used in the production of U.S. Navy submarines. Admiral Morgan's command was responsible for purchasing spare parts, not commodities or raw materials for use in the manufacture of vessels. In fact, quantities of materials sufficient to build a vessel are acquired by the contractor that manufactures the vessel; therefore, any contracting for the acquisition of raw materials would be done by the contractor building the vessel.

From May 23, 2001, through March 12, 2003, appellant's victims invested $14,987,000 in his fraudulent titanium venture using funds from various sources, including 401(k) retirement accounts, mortgages, and student loans. Of that $14,987,000, $4,616,564.71 was paid directly or indirectly [2] back to investors, while $9,010,357.88 was spent on appellant, his family, and his friends, including $1,426,000 on cars, $1,118,000 on credit cards, $1,615,000 on jewelry, $773,000 on homes, $349,000 on artwork, $101,000 on pools, $358,000 on office and home furniture, $44,000 on travels, and $60,000 on charter jets. Appellant also withdrew $235,000 in cash.

Appellant was arrested on March 12, 2003, for the sale of unregistered securities, and a search warrant for appellant's home and One West's offices was executed on March 13 and 14, 2003. After the District Attorney's office examined the documents seized pursuant to the search warrant, appellant was arrested a second

---

ments have to be made in order to keep new money coming in—when the first investors are receiving a return, additional investors will put up money believing they also will see a return on their investment. The theft occurs when the victim gives his money to the perpetrator, not when it is spent.

2. One West had made arrangements with some of its investors to pay mortgages and bills for those investors rather than paying them directly.

time on March 26, 2003, for theft. Two additional search warrants were issued on April 4 and 7, 2003.

## EXPECTATION OF PRIVACY

In his sole issue in this appeal, appellant claims the trial court erred in admitting into evidence computer data disks that were obtained by the Harris County District Attorney's Office in violation of the Fourth Amendment and in allowing testimony about the contents of the disks. Allan Madar, a witness called by the State, testified that appellant's assistant, Lori Franz, asked him to back up the data on One West's computer system. When Madar backed up the system, he made two sets of disks, keeping one set with the knowledge of Franz. The backup disks were not seized pursuant to any search warrant or subpoena. Instead, Madar turned the disks over to the District Attorney's office when the prosecutor contacted him and requested the disks.

Before the State called Madar to testify, a discussion about the backup disks was held outside the presence of the jury. The prosecutor explained that the backup disks were not obtained as a result of any search of One West's offices, but were made at appellant's request. The prosecutor also stated that the District Attorney's office did not subpoena the disks from Madar:

MR. BASS [Counsel for appellant]: Judge, before they're brought in, this next witness, I believe, is going to testify about making backups of computers, I believe. If we could agree those computers were seized during the search of Mr. Lown's office.

MS. STROUD [Prosecutor]: These backup disks have nothing to do with the search, however. They were done before the computers were ever seized.

MR. BASS: But they were done pursuant to the search warrant.

MS. STROUD: Not these, no. They were done pursuant to his request, your client's.

MR. BASS: My client requested—

MS. STROUD: That work be done on his computers. They backed the computers up before they did the work, and these are—

THE COURT: He was having his computer serviced by a company and requested backups and the company kept the backups?

MS. STROUD: The company kept a second copy of the backups.

THE COURT: Okay.

MR. BASS: And y'all subpoenaed those?

MS. STROUD: No.

The trial court then allowed appellant's counsel to voir dire Madar out of the presence of the jury. The voir dire examination essentially concerned whether anyone at One West had authorized Madar to make copies of the backup disks or to take a set of disks from One West's office. Madar responded that Lori Franz, appellant's assistant, had authorized him to make copies of the backup disks and to take the copies with him. Following the voir dire examination of Madar, appellant's counsel lodged the following objection based on the backup disks being acquired without appellant's consent:

My objection would be, Your Honor, that these copies were not acquired with the consent of Mr. Lown, the owner of the company, and that, therefore, that property was acquired without the effective consent of the owner in violation of Texas law and should be suppressed under Article 28.33 [sic] of the Code of Criminal Procedure.

The trial court overruled appellant's objection. Madar then testified in the pres-

ence of the jury that Charles Harper, one of the investors in appellant's titanium scheme, is his boss at Air Liquide America. Harper asked Madar to upgrade and maintain One West's computer system. He initially looked at One West's system on December 4, 2002, but did not perform the backup until March 14, 2003. Franz told Madar that appellant wanted to make sure all the servers were backed up. When he backs up a computer system, Madar puts all the data on a tape or DVD, so if something happens, he can go back to the DVD and restore the server to its prior state. In this case, Madar saved all the information stored on the server to DVDs so that it could be retrieved later if necessary. Madar made two sets of disks and told Franz that he was going to keep one set in case anything happened to the other set. Madar held the second set of disks for One West as One West's property. He later turned the set of backup disks he was holding over to the District Attorney's office, not pursuant to a warrant or subpoena, but at the request of the prosecutor.

During the State's examination of Madar, appellant's counsel again questioned Madar on voir dire, eliciting testimony that Madar did not see appellant at One West's offices on the day he backed up the system. Upon the conclusion of the voir dire examination, appellant's counsel reiterated his previous objection to the backup disks:

I have the same objections I previously made, Your Honor, but no additional objections to State's 84 through 89.

The trial court overruled appellant's objection.

At the conclusion of Madar's testimony, and after the trial court had excused the jury, appellant's counsel objected again and moved to strike the exhibits for the first time based on a warrantless search:

Now comes the defendant, and we move the Court to strike from the record State's Exhibits 84, 85, 86, 87, 88 and 89 on the grounds that said exhibits were acquired through an illegal search without a warrant. Mr. Madar testified that he was holding that property, obviously as an agent for One West Financial. It was their property. And he turned it over at the request of the District Attorney's Office without a warrant, without a subpoena. And so we would ask that the Court strike those exhibits and exclude them from evidence in this case, the jury having not been privy to any of its content at this juncture.

The trial court deferred ruling on appellant's objection. When court resumed, appellant's counsel again objected on the basis of a warrantless search:

With reference to State's Exhibits 84 through 89, we object on the grounds that they were acquired through an illegal search and seizure without a warrant without even a subpoena. They were turned over because of the District Attorney asking an agent to turn them over.

The State responded:

. . . Your Honor, Mr. Lown has no standing to argue the search, whether it's legal or otherwise. And, in fact, if you wish to deem it a search, it was certainly a search by consent, which is an exception to the warrant requirement.

The bottom line is if he wants to call it a search, whether it be legal or otherwise, Mr. Lown has no standing to argue it. Those tapes were given to Mr. Madar to take for his care, custody and control.

The trial court overruled appellant's objec-

tion.[3]

To preserve an error in the admission of evidence, the defendant must make a timely and specific objection. *Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim.App.2000). A motion to strike must also be made in a timely fashion. *Rhoades v. State*, 934 S.W.2d 113, 127 (Tex.Crim. App.1996). An objection is timely if it is made as soon as the ground for the objection becomes apparent, i.e., "as soon as the defense knows or should know that an error has occurred." *Hollins v. State*, 805 S.W.2d 475, 476 (Tex.Crim.App.1991).

As described above, prior to Madar's taking the stand, the prosecutor informed the trial court and appellant's counsel that the backup disks had "nothing to do with the search," but, instead, were made pursuant to appellant's request and One West allowed Madar to keep a second copy of the backup disks. Thus, at this point, the basis for the objection, which appellant now brings on appeal, became apparent. However, while appellant's counsel objected on the basis that the copies of the backup disks were not acquired with appellant's consent, he waited until after Madar had testified to object on the basis of an allegedly illegal warrantless search and to strike the exhibits. *See*

*Rhoades*, 934 S.W.2d at 127 (holding that motion to strike was untimely because basis for motion became manifest when State elicited complained-of testimony).[4] Thus, this issue has not been preserved for appellate review.

Even if appellant had preserved his complaint on appeal, we find the trial court did not abuse its discretion in admitting the backup disks into evidence. A trial court's ruling on the admissibility of evidence is reviewed under the abuse-of-discretion standard. *Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App.2002). The appellate court will not reverse the trial court's evidentiary ruling if it was within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (opinion on reh'g). Therefore, we must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover*, 70 S.W.3d at 845.

"The purpose of both the Fourth Amendment and Article I, § 9, 'is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions.'" *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.

---

3. A computer forensic examiner for the Harris County District Attorney's Office, William Brown, testified that there was no data on the computer system seized from One West's offices on April 4, 2003, because either a new hard drive had been installed or the servers had been "wiped with a software." Brown explained that this could not have happened accidentally, but that "someone had gone in there and wiped of [sic] the data off of the desktops and more than likely replaced the server hard drives with brand-new ones" between March 14, 2003, when Madar created the backup disks, and April 4, 2003, when the computers were seized. Brown found no reference on the backup disks or the computer seized from appellant's home to any government contracts, overseas bank accounts, the

actual purchase of metals, Admiral Morgan, or a forge in New Guinea.

4. The Court of Criminal Appeals has observed that while the proper time for an objection is generally when the evidence is admitted, there may be circumstances under which the grounds for objection are not present until after the evidence has been admitted and, thus, the proper time for an objection may not arise until then. *Johnson v. State*, 878 S.W.2d 164, 167–68 (Tex.Crim.App.1994). However, that was not the situation in this case, where the basis of the objection or the motion to strike was apparent prior to the admission of the backup disks into evidence and Madar's testimony.

1996) (quoting *Richardson v. State,* 865 S.W.2d 944, 948 (Tex.Crim.App.1993)). A defendant has standing to challenge a search under the Fourth Amendment if he had a legitimate expectation of privacy in the place subject to intrusion by the government. *Granados v. State,* 85 S.W.3d 217, 222–23 (Tex.Crim.App.2002), *cert. denied,* 538 U.S. 927, 123 S.Ct. 1578, 155 L.Ed.2d 321 (2003). Because the accused has greater access to relevant evidence, he bears the burden of proving facts establishing a legitimate expectation of privacy. *Villarreal,* 935 S.W.2d at 138. The defendant can meet his burden by proving (1) that by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (2) that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable. *Id.* The following factors, although not exhaustive, are relevant to a determination of whether the defendant's claim of privacy is objectively reasonable: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, prior to the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Granados,* 85 S.W.3d at 223. We are instructed to ex-amine the circumstances surrounding the search in their totality. *Id.*

Appellant contends he had a reasonable expectation in the information contained in his computer files just as a reasonable expectation of privacy exists in the contents of closed containers[5] and digital storage devices.[6] In support of his claim, appellant relies on *United States v. Barth,* 26 F.Supp.2d 929 (W.D.Tex.1998). In *Barth,* when the defendant began experiencing problems with his office computer, he called a computer technician, Kellar. *Id.* at 932. Kellar picked up the hard drive portion of the defendant's computer from his office and took it home with him to work on it because the defendant wanted it returned by the following morning. *Id.* Kellar started opening individual files in search of potential viruses and came across a jpeg picture file. *Id.* When he opened the file, Kellar, who was also a confidential informant for the FBI, observed what appeared to be child pornography. *Id.* Kellar contacted his supervising agent at the FBI, who instructed him to copy all of the files on the hard drive. *Id.* Following this conversation, Kellar opened more files, finding more images of child pornography. *Id.* at 932–33. The next morning, Kellar took the hard drive to the Odessa Police Department where officers viewed the child pornography files. *Id.* at 933.

The court in *Barth* found that by placing data files in a storage device such as his hard drive, the defendant manifested a reasonable expectation of privacy in the

---

**5.** *See United States v. Ross,* 456 U.S. 798, 822–23, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) ("[T]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view.").

**6.** *See United States v. Reyes,* 922 F.Supp. 818, 832–33 (S.D.N.Y.1996) (finding that defendant had reasonable expectation of privacy in contents of pager's memories); *United States*

*v. Chan,* 830 F.Supp. 531, 535 (N.D.Cal.1993) (finding that defendant had reasonable expectation of privacy in contents of pager's memory); *United States v. Blas,* 1990 WL 265179, at *21 (E.D.Wis. Dec.4, 1990) (finding that individual has same expectation of privacy in pager, computer, or other electronic storage and retrieval device as in closed container).

contents of those files. *Id.* at 936–37. The court further determined the defendant did not lose his reasonable expectation of privacy in his closed, individual files when he gave the hard drive to Kellar because he gave it to him for the limited purpose of repairing a problem unrelated to specific files and also expected that he would have the hard drive returned to him the following morning. *Id.* at 937.

Appellant argues that while he may have given up a certain right to privacy by the fact that the backup disks exist just as a person may give up certain rights about the size or shape of a container, he still had a legitimate expectation of privacy in the information contained in those computer files that society recognizes as valid. Appellant argues the sole purpose of backing up the data was so that it could be stored in a separate place in case the files at the office were damaged. Appellant maintains there is no indication that he or anyone at One West expected that the files would be opened and reviewed by others, particularly law enforcement officers without a warrant.

The State argues *Barth* is not applicable because unlike this case, the computer technician in *Barth*, who was also a government informant, did not have authority to open files unrelated to repairs to the computer left with him for that purpose. Here, the express purpose of Madar's actions was to back up the entire system, which, the State asserts, presumably would involve viewing all files on it.

The State further argues this case is factually more like *Rogers v. State*, 113 S.W.3d 452 (Tex.App.-San Antonio 2003, no pet.). In *Rogers*, the defendant took his computer to a computer repair store when it was not functioning properly. *Id.* at 454. The technician determined the computer system had a virus, which had corrupted many areas of the computer sys-

tem, including the backup, and advised the defendant that his only option was to wipe the hard drive and reload it. *Id.* at 455. The defendant specifically requested that all jpeg files be backed up. *Id.* The proper procedure in the computer repair industry requires verification of data that has been backed up so that the customer will only be charged for work properly performed. *Id.* The technician was required to double check the information being backed up. *Id.* In conducting the verification process, the technician detected some photographs he believed were child pornography. *Id.*

The court of appeals in *Rogers* held the defendant had a subjective expectation of privacy in his jpeg files. *Id.* at 457. Therefore, the question in *Rogers* was whether society is prepared to recognize that expectation as objectively reasonable. *Id.* The court of appeals explained that although the defendant had an interest in the computer hard drive, he did not have complete dominion or control over it because he had voluntarily relinquished control to the computer repair store. *Id.* at 458. The *Rogers* court also observed that the defendant did not take normal precautions to protect his privacy because he expressly directed the computer repair technician to backup the jpeg files. *Id.* Finally, the court determined the defendant's claim of privacy was not consistent with historical notions of privacy because a person has no legitimate expectation of privacy in information that is voluntarily turned over to third parties. *Id.*

Thus, by requesting that the computer repair technician back up the jpeg files, the *Rogers* defendant voluntarily turned those files over to the technician for backing up, and the standard operating procedure required the files to be viewed during the process; therefore, after the defendant directed the computer technician to back

up his jpeg files, he no longer had a legitimate expectation of privacy in those files. *Id.*

Appellant argues *Rogers* is distinguishable because the defendant had specifically asked the technician to back up the files at issue and it was "standard operating procedure" to view the files during the back up process. Appellant argues that unlike in *Rogers,* there is no indication in this case that it was "standard operating procedure" to view the files in question or that anyone looked at the files until an investigator for the District Attorney's office did so.

Even if appellant showed that he had a subjective expectation of privacy in the information stored on the computer system located in One West's offices, he has not shown that any such expectation of privacy, under the facts of this case, is one that society accepts as objectively reasonable. There is no evidence that any of the files were the subject of a confidentiality agreement or that any measures had been taken to preserve or protect the documents from disclosure. Appellant did not show that he owned the computers in One West's offices or that he owned One West rather than being a One West employee. Moreover, as the State points out, there is no evidence indicating that appellant's assistant, Lori Franz, lacked authority either to request that Madar back up the entire computer system for One West or to give him permission to take a set of copies of the backup disks. Therefore, appellant failed to demonstrate that he had either a property or possessory interest in, or complete dominion or control over, the computers in One West's offices.

Furthermore, there is no evidence demonstrating that appellant took any precautions (such as encryption) to protect his privacy in the information contained on the computer system. Indeed, the evidence showed that appellant wanted the computer system at One West backed up, but not that he took steps to maintain the confidentiality of the information contained in the system. Finally, actions in requesting that the system be backed up and allowing Madar to keep copies of the backup disks are not consistent with historical notions of privacy. *See Rogers,* 113 S.W.3d at 458 (explaining that when defendant directed computer technician to back up jpeg files, he no longer had legitimate expectation of privacy in those files).

Having failed to show that he has a subjective expectation of privacy that society is prepared to recognize as objectively reasonable, we conclude appellant does not have standing to challenge the acquisition of the backup disks by the State. Therefore, even if appellant had properly preserved error, his argument would have no merit because the trial court did not abuse its discretion in denying appellant's motion to strike. Appellant's sole issue in this appeal is overruled.

Accordingly, the judgment of the trial court is affirmed.