**Affirmed in Part, Reversed in Part, and Remanded, and Majority and Dissenting Opinions filed May 13, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00591-CR

---

### ROBERT EARL HART, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 182nd District Court
### Harris County, Texas
### Trial Court Cause No. 1524656

---

## MAJORITY OPINION

A jury convicted appellant Robert Earl Hart of first-degree murder and assessed punishment at 30-years imprisonment, including a fine in the amount of $5,000.00. Hart appeals his conviction and raises three issues on appeal: (1) Hart's counsel was ineffective by failing to suppress or object at trial to the admission of video surveillance footage during guilt-innocence; (2) Hart's counsel was ineffective when he rejected an instruction on sudden passion after the trial court

offered to include it in the court's charge at punishment; and (3) the trial court erred when it failed to include, sua sponte, an instruction on sudden passion in the court's charge on punishment as part of the law of the case in the punishment phase of the trial. Because we conclude that Hart's trial counsel was ineffective by rejecting a sudden-passion jury instruction, we affirm the portion of the judgment regarding appellant's conviction, reverse the portion of the judgment of the trial court regarding punishment, and remand the case to the trial court for a new punishment hearing.

## I.    BACKGROUND

Ronald Lynn Ray was a former boyfriend of Hart's adult daughter, Stephanie. At trial, Stephanie testified that Ray was abusive, violent, and controlling. She also testified that he tried to isolate her from her family, including confiscating her cellular phone. Stephanie contacted law enforcement authorities on several occasions because she was concerned that Ray would harm her or her family members. Stephanie testified that she tried to leave Ray several times but he would not leave her alone.

In September 2016, Stephanie was staying at her parents' home. Ray drove up to the home uninvited while the family was having lunch. Ray parked across the street from Hart's home, took off his shirt and started to smoke a cigarette while standing outside his vehicle with the car door open. Hart came outside shortly thereafter and approached Ray with a handgun. Words were briefly exchanged, and then Hart pointed his gun at Ray and shot. Hart shot several more times as Ray ran away to hide behind his vehicle. Ray collapsed near the back of his vehicle minutes later. Though it was disputed by Hart at trial, the State introduced evidence that Hart attempted to stage a self-defense claim by placing a handgun in Ray's hand. Hart also told law enforcement that he believed he heard a gunshot before he fired

2

his weapon.

Hart had several surveillance cameras on the front of his home, which captured the confrontation and shooting on video. This video was the foundation of the case for the State, as law enforcement witnesses testified that they did not intend to charge Hart with murder until they saw the surveillance video. Law enforcement gained access to the surveillance video because Hart's wife, Elizabeth, signed consent forms authorizing the Harris County Sheriff's Office, as well as the Harris County Constable, Precinct 3, the right to search and seize "any and all letters, papers, material and other property, which they desire."

## II.  ANALYSIS

### A.  Ineffective assistance of counsel claims

In issues one and two, Hart argues that his trial counsel was ineffective in failing to suppress or object at trial to the admission of video surveillance footage and by rejecting a jury instruction on sudden passion offered by the trial court.

#### 1.  Standard

To prevail on his claim that he did not receive effective assistance of counsel, Hart must show by a preponderance of the evidence that (1) his counsel's performance fell below an objective standard of reasonableness and (2) but for his counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986) (adopting *Strickland* analysis). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. A failure to make a showing under either prong defeats a claim for ineffective assistance. *Id*. at 700.

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. To overcome this presumption, a claim of ineffective assistance must be firmly demonstrated in the record. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). In most cases, direct appeal is an inadequate vehicle for raising such a claim because the record is generally undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Id*.

The record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Though Hart did not file a motion for new trial alleging ineffective assistance of counsel, there is a record of his counsel's reasoning that the parties rely on in their arguments.

### 2. Hart's counsel chose not to pursue a motion to suppress

In issue one, Hart challenges the jury's finding of guilt because he asserts his trial counsel was ineffective in failing to move to suppress or object at trial to the admission of video surveillance footage that was the basis for the State's case. Failure to file a motion to suppress does not per se constitute ineffective assistance of counsel. *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The record reflects that Hart's trial counsel considered avenues for suppressing the video and ultimately did not believe he could support it. During pretrial proceedings, Hart's counsel informed the trial court that Elizabeth did not know what she was signing, but then later counsel stated that he did not have a motion to suppress because he had no evidence to support it. It is undisputed that Hart's counsel never attempted to elicit sworn testimony from Elizabeth on the

4

topic.

Even we were to assume it was objectively unreasonable for Hart's counsel not to bring a motion to suppress under these circumstances, Hart cannot make the required showing under the second prong of the *Strickland* test. To succeed on this ineffective-assistance-of-counsel claim, Hart must show harm—that the trial court would have granted the motion to suppress. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). Hart argues that the trial court would have granted the motion because it was clear that Elizabeth did not understand or fully consent to the search and seizure. We disagree.

A search conducted pursuant to voluntary consent is an established exception to the constitutional-warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Texas law requires the State to prove voluntariness of consent to search by clear-and-convincing evidence. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). The trial court must look at the totality of the circumstances surrounding the statement of consent to determine whether consent was given voluntarily. *Id*. We consider various factors in determining voluntariness of consent: age, education, and intelligence; any constitutional advice given, such as whether the consenting person had the option to refuse consent; whether the consenting person was in custody or restrained at the time, and the length of any such detention; and whether weapons were drawn. *See id.* (citing *Schneckloth,* 412 U.S. at 226). An officer's testimony that consent was voluntarily given can be sufficient evidence to prove the voluntariness of the consent. *See Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000).

Although Elizabeth testified in the punishment phase of trial, she did not testify regarding her lack of consent to the search. Elizabeth's signed consent was admitted into the record during trial. And the Harris County Sherriff's Deputy,

Sofia Silva, who witnessed Elizabeth sign the second consent form, testified at trial. Deputy Silva advised Elizabeth that her consent was voluntary and allowed her as much time as she needed to read it. Elizabeth never asked any questions or sought any clarification as to the forms she was being asked to sign. Deputy Silva further testified that Elizabeth was not under arrest at the time she signed the form, was composed, and took approximately five minutes to review the form. The record also reflects that Elizabeth had already signed a similar consent form allowing the Harris County Constable, Precinct 3, to search the home. Though Elizabeth was sitting in the constable's vehicle during the discussion and signing of the consent forms, Elizabeth was a competent adult who was not detained or under duress, and she was advised of her option to refuse consent. We conclude that the State established Elizabeth's consent to the search by clear-and-convincing evidence. The only indication that Elizabeth may not have understood what she was signing was the statement made by Hart's counsel, which does not constitute evidence. *See Delgado v. State*, 544 S.W.2d 929, 931 (Tex. Crim. App. 1977).

Hart also argues that even if Elizabeth understood she was allowing officers to search her home, it was not established by clear-and-convincing evidence that that she had given consent for officers to search the family's surveillance equipment. The consent form signed by Elizabeth allowed law enforcement the right to search and seize "any and all letters, papers, material and other property, which they desire." Hart cites no authority or testimony to support his argument that the surveillance equipment in the home was not included in the "material and other property" language identified in the consent form. This court has previously determined that property for purpose of a search included surveillance equipment. *Foreman v. State*, 561 S.W.3d 218, 234 (Tex. App.—Houston [14th Dist.] 2018) (citing Code of Criminal Procedure article 18.02(a)(10) in evaluating search

6

warrant and probable-cause affidavit), *rev'd on other grounds*, 613 S.W.3d 160 (Tex. Crim. App. 2020); *see also* Tex. Code Crim. Proc. Ann. art. 3.01 (all words, phrases, and terms to be understood in usual acceptation in common language). Though the consent form does not specifically identify electronic devices or media, the consent is broad, and a fair reading of the consent form should have apprised Elizabeth that the surveillance system was included.

Hart further argues that someone without prior training and experience would have thought that the equipment was malfunctioning or not set to record.[1] It is unclear how this argument affects the voluntariness of Elizabeth's consent, and Hart does not support this argument with any authority or evidence. Elizabeth did not limit her consent in any manner; therefore, her understanding of the functioning of the surveillance equipment is immaterial. We conclude Hart's claim of ineffective assistance of counsel based on failure to bring a motion to suppress cannot be sustained on this record. *See Jackson*, 973 S.W.2d at 957 (claim of ineffective assistance could not be sustained based on record before appellate court because appellant failed to develop facts and details of search sufficient to show search was invalid).

We overrule issue one.

### 3. Hart's counsel rejected the sudden-passion instruction

In issue two, Hart challenges the assessment of his punishment arguing

---

[1] The forensic-video technician who retrieved the video footage testified at trial that the system was clearly receiving a live feed from the cameras on the front of the house when he arrived. He further testified that the buttons on the digital video recorder were initially not responding, so he restarted the system. He did not have to utilize any password or authorization to access and retrieve the stored video. *See Lown v. State*, 172 S.W.3d 753, 760–61 (Tex. App.— Houston [14th Dist.] 2005, pet. ref'd) (upholding denial of motion to suppress when evidence did not prove defendant manifested objective indication of his desire to keep certain files confidential).

counsel was ineffective by rejecting an instruction on sudden passion after the trial court offered to include it in the court's charge and then failed to present evidence to support such an instruction.[2] Hart asserts the first prong of the *Strickland* analysis is satisfied because there was no strategic reason for counsel to request the removal of the sudden-passion instruction from the charge. Hart's counsel stated on the record that he did not believe the facts in the case supported the instruction:

> THE COURT: Okay. So, I'm reading the jury charge with respect to the punishment phase of trial. And I proposed a — just for proposals — a special issue regarding sudden passion, adequate cause sudden passion. And, Mr. Dixon, you are telling you me that you do not want that in there. As you've discussed with the State, you don't believe the facts support it; is that correct?
>
> [DEFENSE COUNSEL]: That is correct, Judge. I went through about six pieces of case law, and there was one that was directly on point and it just — it wasn't supported by the facts.
>
> THE COURT: So, I'm going to take out the sudden passion part out of it. And other than that, do you have any — have you had an opportunity to read the charge yet?
>
> [DEFENSE COUNSEL]: Yes. I read it yesterday, Judge.
>
> THE COURT: Is there any objections, additions, subtractions?

---

[2] The State argued that Hart failed to adequately brief issue two in that he failed to brief a claim that (1) he was entitled to an instruction on sudden passion and (2) trial counsel was ineffective for failing to present evidence of sudden passion at the punishment phase of trial. The State correctly identifies that an appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). However, briefing rules are construed liberally, and substantial compliance is sufficient. Tex. R. App. P. 38.9. With respect to Hart's briefing of his claim he was entitled to an instruction on sudden passion, we conclude there is no briefing waiver. *Id*.

Hart does not present any briefing demonstrating how his trial counsel failed to present evidence to support such an instruction. However, Hart clarifies in his reply that he did not intend for his second issue to be divided. Rather, he meant to "emphasize trial counsel's total abdication on this matter. . . [t]he fact that trial counsel failed to present evidence that would support the instruction when he had the opportunity to do so, simply underscores Appellant's contention." Because Hart is not asserting multiple issues, we need not address the State's argument as to inadequate briefing on Hart's claim that his counsel was ineffective for failing to present evidence of sudden passion at the punishment phase of trial. Tex. R. App. P. 47.1.

[COUNSEL FOR THE STATE]: Not from the State.

[DEFENSE COUNSEL]: Not from the defense.

### a. Did the actions of Hart's counsel fall below an objective standard of reasonableness?

Hart was convicted of murder, which is punishable by imprisonment from five years to life. Tex. Penal Code Ann. §§ 12.32(a), 19.02(c). During the punishment phase of a murder trial, a defendant may argue that he caused the death while under the immediate influence of a sudden passion arising from an adequate cause. Tex. Penal Code Ann. § 19.02(d). "If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." *Id.* If the jury had been allowed to consider the sudden-passion instruction and determined Hart acted under "the immediate influence of sudden passion arising from adequate cause," Hart's offense would have been punishable by imprisonment from two to twenty years. Tex. Penal Code Ann. §§ 12.33(a), 19.02(d).

"Sudden passion" is defined for these purposes as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense *and is not solely the result of former provocation*." Tex. Penal Code Ann. § 19.02(a)(2) (emphasis added). The "adequate cause" giving rise to sudden passion for these purposes is a cause "that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex. Penal Code Ann. § 19.02(a)(1); *see also Beltran v. State*, 472 S.W.3d 283, 294 (Tex. Crim. App. 2015) (requiring causal connection between complainant's provocation, defendant's passion, and homicide). A defendant who presents evidence of sudden passion is entitled to an instruction on this mitigating circumstance "even if that evidence is weak, impeached, contradicted, or

9

unbelievable." *Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003) (per curiam).

The State argues that the evidence did not raise the issue of sudden passion because the provocation by the victim was insufficient to cause "violent passion." In making this argument, the State overlooks evidence supporting the instruction, concluding the victim's behavior should have only caused irritation. Our review must focus on the evidence supporting the instruction, rather the evidence tending to show that Hart did not act under the immediate influence of sudden passion. *Beltran*, 472 S.W.3d at 294. Stephanie testified at trial that Ray was violent, and she believed that Ray was going to hurt her, as well as her father. She also testified that her father was aware of Ray's violent nature and had previously seen the "marks" on her from his abuse. She also testified that her father had seen threatening text messages sent by Ray to Stephanie's mother, Elizabeth, just days before the shooting.

Further, Stephanie and her younger sister were upset when Ray arrived, and she testified they both screamed for their father. The evidence supported a conclusion that Hart was acting out of terror or rage, or both. The video also established provocative behavior on Ray's part, who immediately removed his shirt on arrival and baited Stephanie and her father with his presence outside the property. The video does reflect a brief verbal exchange, though there is no sound in the video. Stephanie's testimony, along with statements by Hart to the homicide investigator, establish that Hart and Ray immediately started yelling at each other. Stephanie recalled hearing her father tell Ray he was not supposed to be at the home. The homicide investigator testified that Hart brought a gun outside to confront Ray because Hart told him that Ray had pulled a gun on his family in the past. A jury could reasonably conclude that Hart reacted pursuant to provocation

by Ray, which "would commonly produce such passion in a person of ordinary temper." *Beltran*, 472 S.W.3d at 294.

The timing of the incident supports a conclusion that Hart lost his capacity for cool reflection. Ray arrived at the house and had not been outside of his car for an entire minute before the shooting occurred. The jury could have determined that Ray's arrival outside Hart's home along with his provocative behavior began a causal chain leading to Hart's passion and ultimately Ray's death. We conclude there was evidence supporting Hart's entitlement to the sudden-passion instruction. *See Trevino*, 100 S.W.3d at 238. Though Hart's counsel believed that his client was not entitled to the sudden-passion instruction, this subjective belief is not controlling in our analysis. *See Lopez v. State*, 343 S.W.3d at 143. Because his reasoning for rejecting the instruction offered by the court was erroneous, it cannot form the basis for a sound trial strategy. *See Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992) ("Under the facts of this case, it would have been error for the trial court to refuse such an instruction, had one been requested. Counsel's performance in not seeking the instruction was clearly deficient."). We conclude that Hart's counsel's performance was deficient for seeking the removal of the instruction from the jury charge.

The dissent claims that we "eviscercate[] any discretion that seasoned criminal defense attorneys may exercise to pursue one defense strategy over another." However, that is not the case. The facts in this case are unusual and this opinion will not have any effect on seasoned criminal-defense attorneys who choose to pursue defensive strategies on behalf of their clients. As already discussed, this is not a situation in which Hart's counsel elected to pursue an alternative defensive strategy instead of seeking a sudden-passion instruction.[3]

---

[3] The dissent argues that Hart was not portrayed as a hot-headed man, but as a

Further reasoning that Hart's counsel believed "at that moment" that his client was not entitled to a sudden-passion instruction, the dissent argues that we should assume that counsel reasonably decided not to pursue the instruction.[4] However, the record does not support a sound trial strategy in the mistaken belief of Hart's counsel. While our appellate review should eliminate "the distorting effects of hindsight," our precedent also does not condone sweeping under the rug legal representation that falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687, 689.

### b.    Was Hart harmed?

Hart must next demonstrate that the trial court would have submitted the instruction to the jury and there was a reasonable probability that, but for counsel's

considerate family man who wanted to protect his daughter from a problematic boyfriend. However, the Penal Code does not require that a defendant be a "hot head" in order to receive the sudden-passion instruction. The sudden-passion instruction is available to a defendant who causes the death of another "under the immediate influence of sudden passion arising from an adequate cause." *See* Tex. Penal Code Ann. § 19.02(a)(1), (a)(2), (d). The dissent's suggestion that Hart's portrayal as a considerate family man who simply "had enough" of the violent and manipulative behavior of his daughter's abusive boyfriend could form the basis of an alternate defensive strategy is misleading and ignores the plain language of the Penal Code. *See id.*

[4] The dissent cites case law for the proposition that it is not objectively unreasonable to fail to request an instruction when that instruction is inconsistent with a theory that counsel advanced at trial. *See Okonkwo v. State*, 398 S.W.3d 689, 697 (Tex. Crim. App. 2013). However, the cases relied on by the dissent are not applicable to the facts before us, because Hart's counsel told the trial court on the record that he did not believe the instruction was supported by the facts. Further, the cases advanced by the dissent focus on instructions and defenses applicable to the guilt-and-innocence phase of trial. *See id.*; *Dannhaus v. State*, 928 S.W.2d 81, 86–87 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *Martini v. State*, No. 05-17-00693-CR, 2018 WL 3598978, at *3 (Tex. App.—Dallas July 27, 2018, no pet.) (mem. op., not designated for publication); *Roberts v. State*, No. 01-16-00059-CR, 2016 WL 6962308, at *5 (Tex. App.—Houston [1st Dist.] Nov. 29, 2016, pet. ref'd) (mem. op., not designated for publication); *Alonzo v. State*, No. 03-05-00849-CR, 2006 WL 2589194, at *4 (Tex. App.—Austin Sept. 8, 2006, no pet.) (mem. op., not designated for publication). Unlike the defensive issues raised in the cases cited by the dissent, the sudden passion-instruction is considered after the jury finds a defendant guilty of murder and operates only to reduce the punishment for murder. *See* Tex. Penal Code Ann. § 19.02(d); *see generally* 43 George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 43:69 (3d ed. 2011 & Supp. 2020).

12

failure to request the sudden-passion instruction, the outcome would have been different, resulting in a shorter sentence. *See Strickland*, 466 U.S. at 694; *see also Glover v. United States*, 531 U.S. 198, 200 (2001) (holding that, "if an increased prison term did flow from an error[,] the petitioner has established *Strickland* prejudice"). However, it is not enough to show that another sentencing option was available. *See Newkirk v. State*, 506 S.W.3d 188, 197–98 (Tex. App.—Texarkana 2016, no pet.). The exchange excerpted above between Hart's counsel and the trial court establishes for purposes of this inquiry the trial court would have submitted a sudden-passion instruction. Therefore, we review for harm, focusing "on the evidence and record to determine the likelihood that a jury would have believed that the appellant acted out of sudden passion had it been given the instruction." *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013).

In the context of a defendant's failure to receive a sudden-passion instruction, courts consider whether the jury, as here, already rejected a claim of self-defense as part of the harm analysis. "The evidence in a case in which a jury rejected a claim of self-defense could demonstrate also that the defendant was not harmed by the failure to receive a sudden passion charge, but the evidence in another such case might not demonstrate a lack of harm." *Trevino*, 100 S.W.3d at 242. Sudden passion and self-defense are not mutually exclusive, and a jury's rejection of self-defense does not necessarily preclude a sudden-passion instruction. *See Beltran*, 472 S.W.3d at 290. In *Trevino* and *Wooten*, on which Hart relies, the Court of Criminal Appeals addressed the question of how a jury's rejection of self-defense affects the harm analysis with respect to the erroneous denial of a sudden-passion instruction. *See Wooten*, 400 S.W.3d at 608; *Trevino*, 100 S.W.3d at 241.

In *Trevino*, defendant was charged with the murder of his wife. 100 S.W.3d

13

at 232, 236. Defendant claimed the shooting occurred after a heated argument and struggle over two guns. *Id*. at 233. According to the lead detective, defendant told him his wife confronted him with a gun after finding telephone numbers of other women in his wallet. *Id*. Defendant retrieved his gun, and after his wife shot at him but missed, the two struggled over the guns. *Id*. In the course of the struggle, defendant's wife was shot three times. *Id*. The detective testified the crime scene did not match defendant's story. *Id.* Based on this testimony, the State argued defendant shot his wife and then staged the scene to make it look like self-defense. *Id.* at 232, 235–36. The jury rejected defendant's claim the shooting was an accident and he acted in self-defense and, after the trial court refused to instruct the jury on sudden passion, assessed a 60-year sentence. *Id.* at 236. Agreeing with the court of appeals that defendant was harmed, the Court of Criminal Appeals noted the jury could have found defendant killed his wife in sudden passion and then staged the crime scene to make the killing appear to have occurred in self-defense. *Id.* at 241–43.

In *Wooten,* defendant was charged with murder after a gunfight with the victim. 400 S.W.3d at 602–03. According to defendant, who testified at trial, the victim dropped off defendant's girlfriend at defendant's apartment after "backing out" of a "date" with her. *Id.* at 603. Defendant greeted his girlfriend outside the apartment and approached the victim's car. *Id.* Defendant testified he saw the victim had placed a gun on the console but began talking with him. *Id.* When the conversation turned to why the "date" had not occurred, the victim's demeanor "became more combative." *Id.* When defendant told the victim he should pay his girlfriend "something for her time," the victim lashed out verbally and then shot at defendant. *Id.* Defendant allegedly shot back in self-defense, killing the victim. *Id.*

The jury rejected defendant's self-defense claim, and as in *Trevino*, when the

14

trial court refused to instruct on sudden passion, assessed a 60-year sentence. *Id*. at 603–04. The court of appeals, concluding the failure to instruct on sudden passion harmed defendant, reversed as to punishment. *Id*. at 604. Disagreeing defendant was harmed, the Court of Criminal Appeals observed "the success of appellant's self-defense claim boiled down to whether the jury would accept that, when he shot [the victim], he reasonably believed that deadly force was necessary to protect himself from [the victim's] use of deadly force." *Id*. at 607, 609. Noting deadly force was the only element of self-defense refuted by the evidence, the court concluded the jury rejected the inference the victim shot first because, had they believed defendant's testimony the victim shot first, the jury "almost certainly" would have acquitted defendant. *Id*. The court further concluded that, the jury, having rejected defendant's self-defense claim, "was highly unlikely" to find defendant acted under sudden passion. *Id*.

Unlike *Wooten*, the determination made by the jury here did not turn on Hart's credibility, as he did not testify at trial and there was video evidence of the interaction between Hart and Ray. We conclude the facts of this case are more like those in *Trevino*. Just as in *Trevino*, Hart shot a person with whom he was familiar and with whom he had an acrimonious history. Like the facts of *Trevino*, the evidence at the crime scene and in the video did not support a self-defense claim. *Trevino*, 100 S.W.3d at 233. And just as the jury in *Trevino* could have found appellant shot his wife under the immediate influence of a sudden passion, the jury here could have found that Hart acted, or overreacted, in a sudden passion in attempting to protect his family. *Id*. at 242–43. The jury was able to view Ray's arrival and provocative behavior, as well as the very short time that elapsed between Ray's arrival and the shooting.[5]

---

[5] Our sister court reached a similar conclusion in an unpublished case. *See Kitchens v.*

15

The jury also had enormous discretion to sentence Hart anywhere from five years to life, and it assessed a sentence of 30 years. If the sudden-passion instruction had been given, the jury would have been told that an affirmative sudden-passion finding would limit Hart's sentence to a maximum of 20 years. Tex. Penal Code Ann. §§ 12.33(a), 19.02(d). In assessing a 30-year sentence for a murder captured on video, the jury could have concluded that Hart did not act in self-defense but that he overreacted to Ray's provocation. Viewing the record as a whole, including the jury's sentence, a "reasonable probability" exists that the jury could have rejected Hart's self-defense claim, yet found that he acted under the influence of sudden passion arising from an adequate cause. Because a "reasonable probability" exists that the jury could have assessed a lower sentence with a punishment range between two to 20 years, our confidence in the conviction is undermined. *Strickland*, 466 U.S. at 694; *see also Vasquez v. State*, 830 S.W.2d at 951.

We sustain issue two. Because we have sustained issue two, we need not reach issue three. Tex. R. App. P. 47.1.

---

*State*, No. 01-18-00518-CR, 2019 WL 6482408, at *12–13 (Tex. App.—Houston [1st Dist.] Dec. 3, 2019, no pet.) (mem. op., not designated for publication) (defendant was harmed by trial court's failure to instruct jury on sudden passion when defendant shot stranger who showed up asking for whereabouts of individual who was not there and threatened defendant in confrontation lasting less than three minutes).

### III. Conclusion

We affirm the trial court's judgment in part as to guilt, but reverse the portion of the judgment as to sentencing, and we remand the case to the trial court for a new punishment hearing.


/s/  Charles A. Spain
    Justice


Panel consists of Justices Wise, Bourliot and Spain (Wise, J., dissenting).

Publish—Tex. R. App. P. 47.2(b).